Goffstown District Court
No. 7955

## THE STATE IN THE INTEREST OF JANE DOE

May 9, 1978

*David H. Souter*, attorney general (*Wilbur A. Glahn, III* by brief), for the State.

*Raymond A. Cloutier*, county attorney, filed no brief for the town of Goffstown.

*Paul H. Lawrence*, of Manchester, guardian *ad litem*, filed no brief for Jane Doe.

BOIS, J.   Two questions of law were reserved and transferred pursuant to RSA 502-A:17-a (Supp. 1977) by the Goffstown District Court (*Orcutt*, J.). The questions, which arose in the course of hearings on a neglected-child petition filed under RSA ch. 169, are as follows: (1) whether the lower court erred in entering a final order requiring the State to pay all but seventy dollars of the neglected child's maintenance and support expenses at Greater Manchester Group Homes, Inc., and (2) whether the court erred in vacating the order and entering a temporary order imposing the same requirements on the State. For the reasons hereinafter indicated, we hold the first question mooted by Laws 1977, ch. 590, and answer the second question in the negative.

The facts are as follows: On September 23, 1976, the district court found Jane Doe to be a neglected child within the meaning of RSA 169:2 V. Jane had moved to Goffstown in the spring of 1976, and at the time of the hearing was living with an aunt while attending school there. Before this she had led a "transient lifestyle," living with her father in both Dover and Goffstown and accompanying him on a trip to the State of Minnesota. Her father was residing in Northwood, her mother in Manchester and her stepmother, it was believed, in Pittsfield.

The court determined that it would be in Jane's best interests if she were placed ,at Greater Manchester Group Homes, Inc. [hereinafter Group Homes], a child care agency in Manchester. The court ordered that, pursuant to RSA 169:10 [amended August 13 and September 10, 1977], Jane be placed at Group Homes in the joint custody of the State department of health and welfare, division of

welfare [hereinafter the division], and the director of Group Homes. The court further ruled that because Jane had lived in several places within and without New Hampshire, no one town should be responsible for all of her support. Pursuant to RSA 169:11 ("Maintenance") [repealed September 26, 1977], it ordered that the town should pay seventy dollars per month for the child's support at Group Homes (the approximate cost of providing public education if the child were to remain in Goffstown) and that the State should be responsible for the balance of the costs of her support.

On September 26, 1976, counsel for Jane filed a motion to modify the order of September 23, alleging that the division refused to provide funds as ordered by the court. A hearing was held on the motion on September 28, 1976; present were, among others, counsel for Jane and two representatives of the division. The division's representatives argued that the law authorized them to pay only up to one hundred fifteen dollars per month for the support of any neglected child, assuming she met certain other requirements. This amount, added to the seventy dollars per month to be contributed by the town, fell short of the actual monthly expenses at Group Homes.

Because of the division's position, the court found that its September 23 order could not be implemented. It modified that order, on September 29, 1976, to provide that pending final disposition of the case Jane was to be committed to the custody of the director of Group Homes and was to reside there temporarily in accordance with RSA 169:7 I (as that statute read before the 1977 amendments). The town was to pay seventy dollars per month towards her care, and the State the balance.

The division advised the court it would pay no more than the allowable maximum amount (one hundred fifteen dollars) even under a temporary maintenance and support order. The court then decreed, again on September 29, 1976, that because it was in Jane's best interests that she be placed immediately at Group Homes (which would not accept her unless assured of payment), the State should pay one hundred fifteen dollars per month and the town the balance. It reserved the right to modify this order at a later date, depending on the outcome of the questions transferred to this court.

The district court subsequently found the director of the division in contempt of court for failing to comply with the court's orders regarding payment. The contempt order was vacated when the division agreed to pay Jane's maintenance and support costs at Group Homes until this court heard and decided the instant appeal. The

division reserved the right to proceed against whoever is legally liable for such costs if the division prevails on appeal.

As phrased by the district court, the reserved and transferred questions are:

> 1. Under the circumstances of this case, when the court ordered, pursuant to RSA 169:10, that Jane Doe be placed at Greater Manchester Group Homes, Inc., did the court err in ordering the State of New Hampshire, Division of Welfare, to pay, pursuant to RSA 169:11, the balance of the cost of Jane Doe's support at Greater Manchester Group Homes, Inc. over and above the Seventy Dollars ($70.00) per month that was to be paid by the Town of Goffstown?

> 2. Under the circumstances of this case, when the court modified its previous order to provide that pending final disposition of the case, Jane Doe was to be committed to the custody of the Director of Greater Manchester Group Homes, Inc., did the court err in ordering, pursuant to RSA 169:7, I, that the State of New Hampshire, Division of Welfare, pay the balance of the cost of Jane Doe's support at Greater Manchester Group Homes, Inc. over and above the Seventy Dollars ($70.00) per month to be paid by the Town of Goffstown?

We need not decide the first question presented. Whether RSA 169:11 supported the court's September 23, 1976, order that the State pay more than one hundred fifteen dollars per month is moot because the statute was repealed on September 26, 1977. Laws 1977, 590:9. No action was taken under the September 23, 1976, order, which was subsequently vacated. Therefore, the retroactivity of Laws 1977, 590:9 is not in question.

We answer the second transferred question in the negative: the district court did not err in vacating its first order, in decreeing that Jane was to be temporarily committed to the custody of the director of Group Homes, or in ordering that, pending final disposition of the petition, the State was to pay all but seventy dollars of Jane's expenses at Group Homes. When the division refused to pay under the court's September 23, 1976, order the court could properly have decided to vacate that order and attempt to make different arrangements for Jane's support and rehabilitation. The court apparently determined that until it devised a permanent program for Jane it would have to provide for her temporary maintenance. It did so in

its September 29, 1976, orders. We hold that this procedure was not erroneous, but rather was wholly consistent with RSA ch. 169 as it read at that time.

The remaining issue is whether the court was correct in ordering the State to assume all but seventy dollars of Jane's expenses under the first September 23, 1976, temporary order. We hold that this procedure, too, was proper. At the time of the hearings in this case, RSA 169:7 [amended August 13 and September 10 and 26, 1977] provided that: "Pending final disposition of the case . . . [a] neglected child . . . may be kept in some suitable place other than the youth development center at the expense of the town, county or state, as may be ordered by the court." This language is plain; we see no reason to reverse the district court's actions taken in compliance with it. *See* 2A C. Sands, Sutherland Statutory Construction § 46.01 (4th ed. 1973). The State itself conceded, in the brief it filed with this court, that "the plain language of RSA 169:7 (Supp. 1975) standing alone, would seem to permit the award of initial expenses pending final disposition of the case." (Emphasis deleted.)

Although the State is liable for Jane's temporary expenses in the first instance, it may recover those expenses from the *person or persons* legally chargeable for her support. At the time this petition was filed and heard, RSA 169:11 [repealed September 26, 1977] provided that a town bearing a neglected child's maintenance expenses "shall have a right of action over for such expense against whoever is legally chargeable for the child's support." As we implied in *Langevin v. Hillsborough County*, 114 N.H. 317, 320 A.2d 635 (1974), the legislative purpose behind RSA 169:11 seems to have been to confer a right of recovery not only on towns but also on other governmental bodies that provide a neglected child's maintenance expenses. *Id.* at 319, 320 A.2d at 636.

RSA ch. 169 as it read before the 1977 amendments did not impose any time limits on the life of a RSA 169:7 I temporary order. Nonetheless it is probably true, as the State argues, that the legislature in enacting RSA ch. 169 did not intend that a neglected-child petition be continued indefinitely. However, the court did not err in the present case in refusing to hastily issue a final order. The parties appearing before the court honestly differed in their interpretations of statutory requirements. The division agreed to pay the cost of maintaining Jane at Group Homes until this court resolved the dispute over the meaning of RSA ch. 169 and other relevant statutory

provisions. Under these circumstances we find no abuse of discretion in the court's continuance of this petition in temporary status. We note that in 1977 the legislature amended RSA 169:7 I to provide that: "In any case involving a neglected child, a final disposition pursuant to RSA 169:10 shall be made by the court within 90 days after the date of the initial hearing." Laws 1977, 590:1. On remand the district court should expeditiously proceed to a final disposition of this petition.

The 1977 amendments also alter (prospectively) the initial liability for a neglected child's maintenance and support expenses. Now whenever the court makes final disposition of a neglected-child petition by placing the child in a foster home, liability for her expenses will be governed by RSA 169:31-b (Supp. 1977) ("Liability for Expenses"). This statute in pertinent part provides:

> [a]ny expenses incurred shall be payable by the person chargeable by law for the child's support and necessities up to an amount determined by the court to be within the person's ability to pay, and such amount shall be stated in the court order. If such person shall be unable or shall refuse to pay expenses in whole or in part, the town in which the child was resident at the time of his being the subject of a petition in accordance with RSA 169:3 or his being taken into custody shall be liable for such expenses with a right of action over for such expenses against the person chargeable by law for the child's support and necessities. A court may make such order as to reimbursement to the town of residence as may be reasonable and just, based on the person's ability to pay. If a town cannot collect for such payments made in behalf of a child, such payments shall be considered assistance to a pauper as to the person chargeable by law for the child's support and necessities and such person shall be subject to a loss of settlement in accordance with the provisions of RSA 164-A:5.

■    The division concedes that even after the 1977 amendments to RSA ch. 169 it could still be liable for one hundred fifteen dollars of Jane's monthly maintenance and support expenses. This liability arises not from RSA ch. 169 but rather from the Aid to Families with Dependent Children—Foster Care program, funded and regulated by both the federal and State governments. *See* 42 U.S.C.A. §§ 601–10, RSA ch. 167; Kravit, *Standards for General Assistance in New Hampshire: An Analysis and Proposal,* 16 N.H.B.J. 135

(1974). The State is correct in contending that as a result of the 1977 amendments it may no longer be held liable for RSA ch. 169 expenses.

We remand for proceedings consistent with this opinion.

*Remanded.*