Merrimack
No. 97-001

CLAREMONT SCHOOL DISTRICT & a.

v.

GOVERNOR & a.
*(motion for extension of deadlines)*

November 25, 1998

*Stein, Volinsky & Callaghan, P.A.*, of Concord (*Andru H. Volinsky* and *Scott F. Johnson* on the motions and orally), and *John E. Tobin, Jr.*, of Concord, on the motions and orally, for the plaintiffs.

*Philip T. McLaughlin*, attorney general (*Mr. McLaughlin* on the motion and orally, and *Martin P. Honigberg*, senior assistant attorney general, orally), for the State.

*Frank V. Sapareto*, State Representative, on the pleadings, as *amicus curiae*.

*Alf E. Jacobson*, State Representative, on the pleadings, as *amicus curiae*.

*Flygare, Schwarz & Closson*, of Exeter (*Thomas J. Flygare* on the pleadings), for An Unnamed, Unincorporated Association of New Hampshire Citizens, as *amicus curiae*.

*Timothy Clark*, member of SAU #51 Board, on the pleadings, as *amicus curiae*.

*Joseph S. Haas, Jr.*, of Ashland, on the pleadings, as *amicus curiae*.

The State has requested that this court "extend the validity of the current education funding system through the 2000 property tax year." In turn, the plaintiffs have asked that we (1) lift the stay entered in this matter on December 17, 1997; (2) develop a contingent plan for temporary receivership to ensure that State funding of New Hampshire's public schools will continue; (3) order the parties to participate in supervised mediation; (4) declare the State's definition of adequacy unconstitutional; and (5) award plaintiffs attorney's fees and costs. For the reasons explained below, we deny all motions except the plaintiffs' request for attorney's fees and costs. We award costs and take the motion for attorney's fees under advisement.

## I. Motion for Extension of Deadlines

On December 17, 1997, this court held that "the present system of financing elementary and secondary public education in New Hamp-

shire is unconstitutional." *Claremont School Dist. v. Governor*, 142 N.H. 462, 465, 703 A.2d 1353, 1354 (1997) (*Claremont II*). We determined that the school tax as currently structured is both disproportionate and unreasonable in violation of the State Constitution. *See* N.H. CONST. pt. II, art. 5. We noted that "[d]ecisions concerning the raising and disposition of public revenues are particularly a legislative function and the legislature has wide latitude in choosing the means by which public education is to be supported." *Claremont II*, 142 N.H. at 476, 703 A.2d at 1360. As the State acknowledged at oral argument in September 1997, "several financing models could be fashioned to fund public education." *Id.* Therefore, rather than remand the case for consideration of remedies, the court chose to "stay all further proceedings until the end of the upcoming legislative session and further order of this court to permit the legislature to address the issues involved." *Id.* In addition, we stated that "[b]ecause the legislature must be given a reasonable time to effect an orderly transition to a new system, the present funding mechanism may remain in effect through the 1998 tax year." *Id.* at 476-77, 703 A.2d at 1360. We expressed our "confiden[ce] that the legislature and the Governor will act expeditiously to fulfill the State's duty to provide for a constitutionally adequate public education and to guarantee adequate funding in a manner that does not violate the State Constitution." *Id.* at 477, 703 A.2d at 1360-61.

Our decision in *Claremont II* was not the beginning of the debate on this topic. In 1971, the Laconia Board of Education challenged the constitutionality of New Hampshire's education funding system, contending that the mechanism of financing the Laconia school system by a property tax was a violation of the Equal Protection Clause of the United States Constitution. *See Laconia Bd. of Educ. v. Laconia*, 111 N.H. 389, 393, 285 A.2d 793, 796 (1971). The court, however, declined to decide the constitutional question in part because its resolution "would require . . . a financial and statistical background which is not available in this case or in this record." *Id.* at 394, 285 A.2d at 796. In 1982, the issue of inequality of education and school financing in New Hampshire was raised again in the case of *Jesseman v. State*, No. 83-371 (N.H. February 13, 1984). The case was settled with the passage of the current foundation aid formula known as the Augenblick Formula. *See* RSA 198:27 *et seq.* (1989 & Supp. 1997). As the attorney general acknowledged at oral argument in the matter now before us, however, the funds anticipated to be distributed under the Augenblick Formula were never appropriated.

Almost five years ago, we held that the New Hampshire Constitution "imposes a duty on the State to provide a constitutionally adequate education to every educable child in the public schools in [this State] and to guarantee adequate funding." *Claremont School Dist. v. Governor*, 138 N.H. 183, 184, 635 A.2d 1375, 1376 (1993) (*Claremont I*). At that time, the court also expressed its "confiden[ce] that the legislature and the Governor w[ould] fulfill their responsibility with respect to defining the specifics of, and the appropriate means to provide through public education, the knowledge and learning essential to the preservation of a free government." *Id.* at 193, 635 A.2d at 1381. No changes to the current system were made, however, and the State proceeded to defend at trial the adequacy of public education and the constitutionality of school funding in New Hampshire.

On appeal from that trial, this court reversed the trial court's ruling that the system of school financing does not violate Part II, Article 5 of the State Constitution, and ordered our co-equal branches of government to devise a constitutional solution. *See Claremont II*, 142 N.H. 462, 703 A.2d 1353. Our decision was issued nearly one year ago. Since then, the legislature has primarily put its efforts into the consideration of legislation (the ABC plan) that was determined to contain an unconstitutional funding mechanism, *see Opinion of the Justices (School Financing)*, 142 N.H. 892, 712 A.2d 1080 (1998), and proposed constitutional amendments designed to nullify in whole or in part this court's decisions in *Claremont I* and *Claremont II*. Although certainly a legitimate political response, *see* N.H. CONST. pt. II, art. 100, the efforts to place a constitutional amendment before the voters for consideration at the general election on November 3, 1998, were not successful. There is no indication in the materials before us that the legislature pursued with equal vigor any alternative solutions to remedy the unconstitutional funding system in the event that these avenues failed. Further, the State indicates that all *Claremont*-related bills except the ABC plan have been tabled, sent to study committees, or voted inexpedient to legislate.

In the motion now before us, the State contends that "despite diligent efforts by the executive and legislative branches of government to comply with the extremely tight time frame set in *Claremont II*, [it] has not yet been able to develop and implement an education funding system in response to the *Claremont II* decision." The State suggests that it is in part because of this court's decision in *Opinion of the Justices (School Financing)*, that it has become "practically impossible to meet" the deadlines established in

*Claremont II.* Thus, the State seeks a two-year period in which to "create an education funding system to meet the *Claremont II* mandates" and to prevent disruption to the operations of school districts.

The New Hampshire Constitution is the supreme law of this State. *See Merrill v. Sherburne,* 1 N.H. 199, 217 (1818). Every person chosen governor, councilor, senator, or representative in this State is solemnly committed by oath taken pursuant to Part II, Article 84 to "support the constitutions" of the United States and New Hampshire. Responsibility to act to remedy the constitutional defects articulated by this court in *Claremont II* lies with the Governor and the legislature. That we fulfilled our duty to interpret the constitution and say what the law is, *see State v. LaFrance,* 124 N.H. 171, 177, 471 A.2d 340, 343 (1983), declaring unconstitutional the abatement provision contained in the ABC plan, does not present a convincing reason why the other co-equal branches of government have been unable to remedy the continuing constitutional defect. The executive and legislative branches are "duty bound to devote every effort" to resolution of this matter. *Cooper v. Aaron,* 358 U.S. 1, 7 (1958).

█ Absent extraordinary circumstances, delay in achieving a constitutional system is inexcusable. The legality of the education funding system in this State has been questioned for at least the past twenty-seven years, and the parties involved in the present action have been engaged in litigation for over seven years. The controlling legal principles are plain. The command of Part II, Article 83 is that the State bears the duty to provide a constitutionally adequate education to every educable child in the State and to guarantee adequate funding. *See Claremont I,* 138 N.H. at 184, 635 A.2d at 1376. The command of Part II, Article 5 is that taxes be proportional and reasonable, thereby forbidding varying property tax rates across the State to support the public duty to provide education. *See Claremont II,* 142 N.H. at 471, 703 A.2d at 1357. "[I]t should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." *Brown v. Board of Education,* 349 U.S. 294, 300 (1955). The constitutional rights of the children in this State to an adequate State-funded education and of all taxpaying citizens in New Hampshire to reasonable and proportional taxation are not to be denied any longer. Based on the record and pleadings before us, the motion for extension of deadlines is denied.

## II. Motion to Lift Stay

As explained above, we ordered in *Claremont II* that all further proceedings be stayed "until the end of the upcoming legislative session and further order of this court . . . ." *Claremont II*, 142 N.H. at 476, 703 A.2d at 1360. The plaintiffs request that we lift that stay. The current legislative session automatically expires a few days from the date of this opinion. *See* N.H. CONST. pt. II, art. 3. There is no need, therefore, to lift that portion of the stay that is for all practical purposes over. Further, because the legislative and executive branches must fulfill their constitutional responsibilities, *see* N.H. CONST. pt. II, art. 84, we do not schedule further proceedings at this time. The motion is denied.

## III. Contingent Plan for Temporary Receivership

The plaintiffs request that this court "establish a schedule by which the parties will be required to submit briefs to the Court that define the authorities and powers of a receiver to be appointed by the Court to ensure state funding of New Hampshire's public schools will continue in the event that the Governor and Legislature fail to adopt and implement a constitutional method of funding the public schools prior to April 1, 1999." The plaintiffs contend that "in light of the State's failure to act over the last ten months, . . . it is prudent to plan now for the possibility that the State will fail to act by April 1st." According to the plaintiffs, "the Court must be prepared to act to save the State's schools."

The issues related to this request have been briefed and argued before this court. There are no present or anticipated circumstances that would lead us to conclude that a constitutional funding mechanism will not be in effect at the start of the 1999 tax year. *See Claremont II*, 142 N.H. at 476-77, 703 A.2d at 1360. The motion is denied.

## IV. Court Supervised Mediation

The plaintiffs request that this court order the parties to participate in supervised mediation. Without deciding whether this court has the authority to order mediation, the oral arguments before us in this matter made it clear that mediation is an impractical solution. Therefore, the motion is denied.

## V. Definition of Adequacy

The plaintiffs request that this court declare the State's definition of adequacy unconstitutional. While the adequacy legislation, Laws

1998, ch. 389, adopts a statutory definition of an adequate education, the State specifically acknowledges that the legislature has yet to achieve "a system to ensure delivery of a constitutionally adequate education." Because the State concedes that it has not completed its efforts to define and implement a constitutionally adequate education as required by *Claremont II*, we decline the present invitation to determine whether the definition adopted is facially unconstitutional. The motion is denied without prejudice.

## VI. Attorney's Fees and Costs

The plaintiffs request that this court award them attorney's fees and costs "for prevailing in the liability phase of the *Claremont* litigation." Because the plaintiffs' motion raises significant issues not fully briefed, we defer consideration of this issue at this time. We take this matter under advisement subject to further order of this court. Pursuant to Supreme Court Rule 23, we grant the plaintiffs' motion for taxation of costs dated December 31, 1997, in the amount of $18,646.82, to which the State did not object.

## VII. Conclusion

This court is well aware that the new legislative session is scheduled to begin next week. We have worked expeditiously to rule on these motions in order to return this opinion by the organizing date for the new legislature. It is apparent that time is now of the essence. As the attorney general has correctly opined in a letter to the commissioner of the department of revenue administration:

> Absent corrective legislation establishing an educational funding system that is equal in valuation and uniform in rate or a constitutional amendment, you would have no lawful authority to establish school-related tax rates for towns or to certify school appropriations for the period after March 31, 1999, that is, after the end of the 1998 tax year.

*See* Letter from Philip T. McLaughlin, Attorney General, to Stanley R. Arnold, Commissioner, New Hampshire Department of Revenue Administration (September 2, 1998) (attached to the plaintiffs' memorandum of law in support of motion for development of contingent plan for temporary receivership).

We observe that the only way for an orderly solution to occur is for legislation implementing such a solution to be enacted. For this to occur our co-equal branches of government must act. The Separation of Powers Clause of the State Constitution, Part I,

Article 37, prevents one branch of government from encroaching on the power of another. *See Opinion of the Justices*, 129 N.H. 714, 717, 532 A.2d 195, 197 (1987). Here, however, we emphasize the final part of that provision, which speaks of "that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity." N.H. CONST. pt. I, art. 37. We have acted in accordance with our duty to interpret the State Constitution to declare the system of financing public elementary and secondary education in this State unconstitutional. The legislature during the past eleven months has engaged in rigorous and spirited debate, which is essential to a healthy democracy. Now we look to the Governor and the legislature to put into effect a constitutional financing system so that together, in a bond of unity and amity, THE STATE OF NEW HAMPSHIRE, *see* N.H. CONST. pt. II, art. 1, may move forward to constitutionally educate our children in the next millennium.

*So ordered.*

DAVID A. BROCK
WILLIAM R. JOHNSON
SHERMAN D. HORTON, JR.
JOHN T. BRODERICK, JR.
WILLIAM F. BATCHELDER

November 25, 1998

THAYER, J. did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3.