474

Request of the Senate
No. 00-179

## OPINION OF THE JUSTICES

### (Reformed Public School Financing System)

December 7, 2000

It was resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following important questions of law:

(a) Would the enactment of SB 462-FN-A-LOCAL satisfy the requirements of part II, articles 5, 6, and 83 of the New Hampshire constitution?

(b) Would the enactment of SB 462-FN-A-LOCAL violate any other provisions of the New Hampshire constitution?"

The full text of the senate resolution is reproduced as an appendix to this opinion.

*To the Honorable Senate:*

The following response is respectfully returned:

The stated purpose of SB 462-FN-A-LOCAL (the bill) is to "establish[] a reformed public school financing system for ensuring educational adequacy for all children, and establish[] a state public

education assistance system funded solely with state tax revenues, and mak[e] an appropriation therefor." The bill has four main components. First, it establishes a public school financing system comprised of (1) the existing State aid for educational adequacy (renamed "baseline assistance for educational adequacy"), and (2) State aid/alternative State aid to guarantee educational adequacy, based upon the previous foundation aid and alternative aid formulas for determining State aid to education (called "adequacy guarantee assistance"). Second, the bill modifies the current formula for determining baseline assistance for educational adequacy. Third, it reduces the statewide education property tax rate from $6.60 to $6.10 on each $1,000 of assessed taxable property. Fourth, the bill makes an appropriation of $2,000,000 from the education trust fund for the fiscal year ending June 30, 2001, to the department of education for the purpose of funding the adequacy guarantee assistance distributions.

Viewed in its entirety, the bill proposes to raise and distribute approximately $750,000,000 of State financial aid to school districts to meet the State's obligation under the decision in *Claremont School District v. Governor*, 142 N.H. 462, 703 A.2d 1353 (1997) (*Claremont II*). Of this sum, $409,000,000 would be raised through a uniform statewide property tax, while $341,000,000 would be raised through other State taxes and general fund sources. The bill would distribute $550,000,000 of "baseline assistance for educational adequacy" among school districts on a weighted per pupil basis. The remaining $200,000,000 would be distributed as "aid to guarantee educational adequacy." This money would be allocated among school districts under a needs-based formula, which would assess the relative financial needs of each community using several factors, including per capita income, local property valuations, and local "tax effort."

We have been requested to give our opinion on two questions. First, whether enactment of the bill would "satisfy the requirements of part II, articles 5, 6, and 83 of the New Hampshire constitution" and, second, whether enactment of the bill would "violate any other provisions of the New Hampshire constitution." We have historically declined to answer general inquiries on constitutional infirmity and, in keeping with that practice, we respectfully decline to answer the second question. *See Opinion of the Justices (Weirs Beach)*, 134 N.H. 711, 717, 598 A.2d 864, 867-68 (1991). We turn, therefore, to the first question, which we answer in the negative.

Part II, Article 5 provides that the legislature may "impose and levy proportional and reasonable assessments, rates, and taxes,

upon all the inhabitants of, and residents within, the said state."
Part II, Article 6 provides that "[t]he public charges of government,
or any part thereof, may be raised by taxation . . . ." Part II,
Article 83 provides that

> [k]nowledge and learning, generally diffused through a
> community, being essential to the preservation of a free
> government; and spreading the opportunities and advan-
> tages of education through the various parts of the country,
> being highly conducive to promote this end; it shall be the
> duty of the legislators and magistrates, in all future periods
> of this government, to cherish the interest of literature . . .
> and all . . . public schools . . . .

In *Claremont School District v. Governor*, 138 N.H. 183, 635 A.2d
1375 (1993) (*Claremont I*), we interpreted Part II, Article 83 to
"impose[] a duty on the State to provide a constitutionally adequate
education for every educable child in the public schools in New
Hampshire and to guarantee adequate funding." *Id.* at 184, 635 A.2d
at 1376.

In *Claremont II*, we concluded that "the property tax levied to
fund education is, by virtue of the State's duty to provide a
constitutionally adequate public education, a State tax . . . ."
*Claremont II*, 142 N.H. at 466, 703 A.2d at 1356. We held that to the
extent the property tax is used to comply with the mandate of Part
II, Article 5, it must be administered in a manner "that is equal in
valuation and uniform in rate throughout the State." *Id.* at 471, 703
A.2d at 1357.

■ The bill contains legislative findings which acknowledge that
its proposed funding mechanism would rely, in part, upon local
property taxes to pay for some of the cost of an adequate education.
These findings directly contradict the mandate of Part II, Article 83,
which imposes upon the State the exclusive obligation to fund a
constitutionally adequate education. The State may not shift any of
this constitutional responsibility to local communities as the pro-
posed bill would do.

According to the bill, the legislative budget and accounting office
(LBA) has projected the statewide cost of an adequate education
during fiscal year 2001 at $909,839,861. Under the bill, the State's
contribution would be $748,712,651, comprised of: (1) $408,630,541
raised by a $6.10 statewide property tax; (2) $140,063,402 in
"baseline grants"; and (3) $200,018,608 in "foundation aid." The
balance of $161,127,210 would be funded by local school districts
through local property taxes.

The LBA calculations demonstrate that many school districts are left with unfunded gaps between the purported cost of an adequate education and the amount of State aid provided under the bill. These deficiencies would be made up through the imposition of local property taxes. For example, in fiscal year 2001, Franklin would be required to raise $419,618 locally, while Lisbon would need to raise $93,500. Each of the nine largest school districts in the State would have to raise additional money to pay for the cost of an adequate education, ranging from $262,897 in Berlin to $18,877,009 in Nashua.

In towns where no additional money needs to be raised by local taxes to underwrite the cost of an adequate education, the taxpayers would pay the uniform property tax rate of $6.10 per $1,000. In other towns that need to fill the gap, the effective tax rate would be higher. Further, the amounts needed to be raised locally to fund a constitutionally adequate education could increase in any given year as a result of the "adjustment constant" provision in section VII of the bill. This provision allows the legislature to allocate less funding for foundation aid than currently provided by the bill and would, therefore, increase the tax burden on local communities to fund the State's obligation.

As was the case under the system in place when *Claremont II* was decided, if this bill is enacted, taxpayers across the State will be paying real estate taxes at disproportionate and unequal rates to fulfill the State's constitutional duty.

> Because the diffusion of knowledge and learning is regarded by the State Constitution as "essential to the preservation of a free government" . . . it is only just that those who enjoy such government should equally assist in contributing to its preservation. The residents of one municipality should not be compelled to bear greater burdens than are borne by others.

*Claremont II*, 142 N.H. at 470, 703 A.2d at 1357. "[T]o the extent that a property tax is used to raise revenue to satisfy the State's obligation to provide an adequate education, it must be proportional across the State." *Opinion of the Justices (School Financing)*, 142 N.H. 892, 901, 712 A.2d 1080, 1086 (1998).

Because it may be of some assistance to the legislature, and to the extent there may be any lingering confusion, we take this opportunity to reiterate core holdings from earlier *Claremont* decisions.

■ First, the New Hampshire Constitution imposes solely upon the State the obligation to provide sufficient funds for each school

district to furnish a *constitutionally* adequate education to every educable child. *See Claremont I*, 138 N.H. at 184, 635 A.2d at 1376; *Claremont II*, 142 N.H. at 473, 703 A.2d at 1356. Beyond constitutional adequacy, yet to be defined, the legislature may authorize "local school districts to dedicate additional resources to their schools or to develop educational programs beyond those required." *Claremont II*, 142 N.H. at 475, 703 A.2d at 1360.

Second, we have never ruled that constitutional adequacy requires a uniform expenditure per pupil throughout the State. In fact, the cost of a constitutionally adequate education may not be the same in each school district. *See id.* at 473-74, 703 A.2d at 1359. The constitution mandates statewide adequacy — not statewide equality. It is, however, the State's obligation to underwrite the cost of an adequate education for each educable child.

■ Third, while local school districts may choose to spend money in varying ways to provide an education for their students, all funds they receive from the State for constitutional adequacy *must* be used for education. *See id.* at 476, 703 A.2d at 1360.

■ Finally, as articulated in *Claremont I* in 1993, the content of a constitutionally adequate education must be defined, in the first instance, by the legislature. *See Claremont I*, 138 N.H. at 193, 635 A.2d at 1381.

It is not possible to determine the level of funding required to provide the children of this State with a constitutionally adequate education until its essential elements have been identified and defined. The legislature and the Governor have broad latitude to fashion the specifics. Once this critical task has been completed, it is for the legislature to adopt a funding mechanism to ensure that a constitutionally adequate education is provided.

This court has never directed or required the selection of a particular funding mechanism. If the legislature chooses to use a property tax, however, the tax must be equal and proportional across the State. *See Claremont II*, 142 N.H. at 471, 703 A.2d at 1357.

David A. Brock
John T. Broderick, Jr.
Joseph P. Nadeau
Linda S. Dalianis

December 7, 2000

*Philip T. McLaughlin*, attorney general (*Steven M. Houran*, deputy attorney general, and *Anne M. Edwards*, assistant attorney

general, on the memorandum), filed a memorandum in support of negative answers to the questions.

*Stein, Volinsky and Callaghan, P.A.*, of Concord (*Scott F. Johnson* and *Andru H. Volinsky* on the memorandum), and *John E. Tobin, Jr.*, of Concord, filed a memorandum on behalf of the Claremont petitioners in support of negative answers to the questions.

*Rath, Young and Pignatelli, P.A.*, of Concord (*William F.J. Ardinger* on the memorandum), filed a memorandum on behalf of Senator Frederick W. King and other members of the New Hampshire Senate in support of affirmative answers to the questions.

*Frederic K. Upton*, of Concord, filed a memorandum on behalf of three members of the New Hampshire Senate in support of a negative answer to question a.

*Senator Carl R. Johnson*, of Meredith, filed a memorandum in support of affirmative answers to the questions.

*Wayne Semprini*, of Portsmouth, filed a memorandum in support of affirmative answers to the questions.

*Representative Andrew R. Peterson*, of Peterborough, filed a memorandum in support of affirmative answers to the questions.

*Representative John R.M. Alger*, of Rumney, filed a memorandum in support of affirmative answers to the questions.

*Donahue Tucker & Ciandella*, of Exeter (*Charles F. Tucker* on the memorandum), filed a memorandum on behalf of the towns of Bartlett, Hart's Location, and Jackson, in support of affirmative answers to the questions.

*Eugene M. Van Loan III*, of Manchester, filed a memorandum in support of affirmative answers to the questions.

*Business & Industry Association of New Hampshire*, of Concord (*John D. Crosier* on the memorandum), filed a memorandum in support of affirmative answers to the questions.

*NEA-New Hampshire*, of Concord (*James F. Allmendinger* on the memorandum), filed a memorandum in support of negative answers to the questions.

*The Disabilities Rights Center, Inc.*, of Concord (*Sheila Zakre* on the memorandum), filed a memorandum in support of negative answers to the questions.

*Gordon J. Humphrey*, of Concord, filed a memorandum in support of affirmative answers to the questions.

*Flygare, Schwarz & Closson PLLC*, of Exeter (*Thomas M. Closson* on the memorandum), filed a memorandum.

*Joseph S. Haas, Jr.*, of Ashland, filed a memorandum.

### APPENDIX

The following resolution, Senate Resolution No. 13, requesting an opinion of the justices, was adopted by the senate on March 23, 2000, and filed with the supreme court on March 27, 2000:

"Whereas, there is presently pending before the senate SB 462-FN-A-LOCAL, 'An act establishing a reformed public school financing system for ensuring educational adequacy for all children; establishing a state public education assistance system funded solely with state tax revenues, and making an appropriation therefor'; and

"Whereas, SB 462-FN-A-LOCAL would establish a comprehensive system for financing public schools within the state, including state aid through 'baseline adequacy assistance' and through 'adequacy guarantee aid,' along with local resources raised through property taxes administered through local democratic decision-making (hereinafter, the 'financing program'); and

"Whereas, SB 462-FN-A-LOCAL would distribute $750 million of state financial aid to school districts in the first fiscal year ending July 31, 2001, with $550 million distributed through the 'baseline assistance' method on a weighted per pupil basis and $200 million distributed through the 'adequacy guarantee assistance' method based on a foundation aid formula that assesses the relative financial needs of each community using several factors including per capita income, local property valuations, and measures of local tax 'effort'; and

"Whereas, SB 462-FN-A-LOCAL's total appropriation of $750 million of state financial aid would be funded by the following state-imposed taxes and revenues: (i) $409 million of revenues raised by a state property tax imposed at a uniform rate of $6.10 per $1,000 of equalized valuation of non-public utility real property throughout the state, and (ii) $341 million of revenues raised by other state taxes and general fund sources; and

"Whereas, the balance of the public education costs throughout the state over the state assistance of $750 million would be funded with revenues raised by local real property taxes that would be

established in each community through local democratic processes; and

"Whereas, under this integrated financing program, direct state appropriations would account for approximately half of the total dollars spent on public elementary and secondary education, ranking New Hampshire much higher than the following states (based on U.S. Department of Education data for School Year 1996-1997):

| State | Local | State | Federal |
|-------|-------|-------|---------|
| Connecticut | 59.4% | 37.1% | 3.5% |
| Massachusetts | 55.3% | 39.9% | 4.8% |
| New York | 54.8% | 39.8% | 5.4% |
| Pennsylvania | 55.2% | 39.3% | 5.5% |
| Rhode Island | 54.0% | 40.6% | 5.4% |

"Whereas, SB 462-FN-A-LOCAL would reflect a legislative determination that the provision of an adequate education is not a static concept, but is best accomplished through the establishment of a process that encourages local communities to evaluate on an annual basis the costs and structure of local public education; and

"Whereas, SB 462-FN-A-LOCAL would further reflect a legislative determination that incorporation of significant local resources in such a manner that vests local parental and academic resources in the local public school system is the best means of providing an adequate education for all children throughout the state; and

"Whereas, SB 462-FN-A-LOCAL would further reflect a legislative determination that such reliance on local resources, while producing vibrant and excellent education systems in most communities throughout the state, would present the possibility in certain needy communities that local resources could be insufficient to ensure the provision of an adequate public education; and

"Whereas, to address directly this possibility, SB 462-FN-A-LOCAL would implement a state financial assistance program that would substantially increase state aid to public education over the level that was in place prior to 1999; and

"Whereas, SB 462-FN-A-LOCAL would distribute such state aid among communities based on the foundation aid formula in accordance with legislative determinations assessing the relative needs of various recipient communities, based on several factors including per capita income, local property valuations, and measures of local tax 'effort'; and

"Whereas, as a result of these determinations of need, the level of state aid distributed among communities would differ greatly, with no community receiving the same amount of state aid per pupil as

any other community; rather such state aid would be distributed in a manner intended to satisfy the state's obligation to guarantee funding to ensure that all children are provided with an adequate education; and

"Whereas, all of such state aid would be funded with state revenues that are administered in a manner that is proportional and reasonable throughout the state; and

"Whereas, a question has been raised whether SB 462-FN-A-LOCAL satisfies the New Hampshire constitution; and

"Whereas, some believe that this court's decision in *Claremont School District v. Governor*, 142 N.H. 462 (1997) ('*Claremont II*') mandates that the general court must, first establish and define 'adequate education' on a dollar cost basis throughout the state, and, second, pay for all of the resulting adequate education dollar costs using a common formula throughout the state, regardless of the relative needs of various communities; and

"Whereas, such a construction of the court's *Claremont II* decision has led to the enactment of Chapter 17 and Chapter 65 of 1999 New Hampshire Laws, which distribute state financial assistance among every community throughout the state on a strict weighted per pupil basis, regardless of the quality of the local public school system or the capacity of the local community to provide funds through local resources; and

"Whereas, in contrast, SB 462-FN-A-LOCAL treats 'adequate education' as a quality that is not definable by any common formula applied throughout the state on a dollar cost basis, provides for an adequate education throughout the state through a comprehensive mix of local and state funding similar to that reflected in other New England states, and incorporates within the funding mix a state aid distribution formula that is designed to allocate limited state aid to communities that are most in need in a manner that guarantees funding to ensure that all children receive an adequate education throughout the state; and

"Whereas, the approach in SB 462-FN-A-LOCAL appears consistent with the ultimate constitutional requirement that it is 'the State's duty to provide a constitutionally adequate education and to guarantee adequate funding' (emphasis added) [*sic*]; and

"Whereas, the senate respectfully requests expeditious review of this resolution by the court because SB 462-FN-A-LOCAL is intended to become effective on July 1, 2000, and because enactment of public school financing legislation that fails to satisfy the constitutional requirements of the Claremont II decision could present risk that local and state governments might be required to

refund substantial amounts of local property tax revenues; now therefore be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following important questions of law:

(a) Would the enactment of SB 462-FN-A-LOCAL satisfy the requirements of part II, articles 5, 6, and 83 of the New Hampshire constitution?

(b) Would the enactment of SB 462-FN-A-LOCAL violate any other provisions of the New Hampshire constitution?"