Hillsborough-southern judicial district
No. 2006-258

LONDONDERRY SCHOOL DISTRICT SAU #12 & a.

v.

STATE OF NEW HAMPSHIRE

Submitted: October 2, 2008
Opinion Issued: October 15, 2008

*Orr & Reno, P.A.*, of Concord (*William L. Chapman* on the memorandum), for the petitioners.

*Kelly A. Ayotte*, attorney general (*Anne M. Edwards*, associate attorney general, and *Laura E. B. Lombardi*, assistant attorney general, on the memorandum), for the State.

*David Frydman* and *Jeffrey A. Meyers*, of Concord, on the memorandum, for the Speaker of the New Hampshire House of Representatives and the President of the New Hampshire Senate, as *amici curiae*.

*James F. Allmendinger*, of Concord, staff attorney, on the memorandum, for NEA-New Hampshire, as *amicus curiae*.

HICKS, J. The petitioners brought this action in 2005 seeking a declaratory judgment that House Bill (HB) 616, the statute previously governing education funding and allocation, was unconstitutional. At the conclusion of the proceedings below, the Superior Court (*Groff*, J.) declared the legislation unconstitutional on its face because HB 616 "failed to fulfill [the State's] duty to define a constitutionally adequate education, failed to determine the cost of an adequate education, . . . failed to satisfy the requirement of accountability, and . . . create[d] a non-uniform tax rate in violation of Part II, Article 5 of the New Hampshire Constitution." *Londonderry Sch. Dist. v. State*, 154 N.H. 153, 155 (2006).

On appeal, we affirmed the ruling that the State had failed to define a constitutionally adequate education, retained jurisdiction over the core definitional issues pending legislative response and stayed the remaining issues. *Id.* at 162. This was because "the definition of a constitutionally adequate education is essential to all other issues." *Id.*

The legislature has now responded to the definitional issue by enacting Laws 2007, chapter 270, which is codified at RSA chapter 193-E. The petitioners do not challenge the constitutional sufficiency of this definition. In addition to defining a constitutionally adequate education, RSA chapter 193-E also paved the way for the State to determine the cost of an adequate education by creating a Joint Legislative Oversight Committee to study the issues. The legislature has since passed several statutes in an attempt to satisfy its duty to determine the cost of and fund a constitutionally adequate education. *See* Laws 2007, ch. 262; Laws 2007, 263:35 (superseding HB 616's funding plan until the year 2009); Laws 2008, ch. 173 (determining the cost of a constitutionally adequate education and outlining various funding mechanisms). Laws 2008, chapter 173 also establishes legislative committees to investigate funding issues and satisfying the fourth duty of ensuring the delivery of a constitutionally adequate education through accountability.

In response to our July 25, 2008 order requiring the interested parties to file brief memoranda in light of this legislation, the petitioners and *amicus curiae* NEA New Hampshire allege several infirmities in Laws 2008,

chapter 173. In addition to highlighting that the accountability requirement has yet to be met, they claim insufficiency in the universal cost per pupil, the allocated differentiated aid and the student-teacher ratio. The petitioners further take issue with chapter 173's two-year funding phase-in provisions because they allege that this carries forward certain infirmities of HB 616 during the interim. The petitioners, however, offer to forego a challenge to this funding if the State provides the allotted funds and does not otherwise reduce the budget. We note that the petitioners have previously informed the court that they would assent to a dismissal of this case without prejudice "if the State will commit to making a good faith effort to fulfill, by June 30, 2008, the remaining three mandates of its constitutional duty to provide an adequate education to every child in the state."

The State and *amici curiae*, President of the Senate and Speaker of the House, assert that the action is now moot because "[t]he education funding plan before the court in the present case, . . . []HB 616[], is no longer in effect and is not based on the existing statutory definition of an adequate education." The State and *amici curiae*, in essence, maintain that, with the enactment of Laws 2007, chapter 270 and Laws 2008, chapter 173, the State has now taken sufficient steps toward satisfying its constitutional duty to render the prior dispute over HB 616 moot by establishing costing and funding legislation and creating a legislative oversight committee as an affirmative first step towards ensuring accountability. The State also points out that neither chapter 270 nor chapter 173 has been challenged by the petitioners or subjected to a factual inquiry before the trial court.

■ We find that the action is now moot. "Generally . . . a matter is moot when it no longer presents a justiciable controversy because issues involved have become academic or dead." *In re Juvenile 2005-212*, 154 N.H. 763, 765 (2007). A challenge seeking only prospective or declaratory relief is generally mooted where intervening legislative activity renders the prior law inapplicable. *See, e.g., In re Guardianship of R.A.*, 155 N.H. 98, 100-01 (2007) (challenge moot where relevant statute no longer in effect); *State in the Interest of Jane Doe*, 118 N.H. 330, 333 (1978) (declining to entertain question of statutory construction where statute was repealed); *Keene v. Gerry's Cash Mkt., Inc.*, 113 N.H. 165, 168 (1973) (recognizing that dispute over injunctive relief was moot where ordinance at issue repealed).

■ ■ We are, however, hesitant to dismiss a dispute as moot simply because one party voluntarily ceases the challenged practice or attempts to remedy its failure to act. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). This is particularly so where, as here, the action implicates constitutional rights and duties. *See* N.H. CONST. pt. II, art. 83;

*see also Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 675 (1978). However, we find no indication that either chapter 270 or chapter 173 is substantially similar to HB 616. We presume that, in enacting chapters 270 and 173, the legislature acted in good faith and crafted a responsive mandate intended to address the constitutional infirmities of the prior legislation. *See D.H.L. Associates, Inc. v. O'Gorman*, 199 F.3d 50, 54-55 (1st Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000); *see also Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008) ("Usually . . . legislative action will provide [adequate] assurance . . . because when the defendants are public officials we place greater stock in their acts of self-correction, so long as they appear genuine." (quotation and ellipsis omitted)); *Claremont School Dist. v. Governor*, 138 N.H. 183, 193 (1993) (expressing confidence that political branches would "fulfill their responsibility . . . to defin[e] the specifics of, and the appropriate means to provide through public education, the knowledge and learning essential to the preservation of a free government").

■ Although we are mindful of the petitioners' claims that the new legislation presents new problems, it is precisely for this reason that the controversy before this court is now moot. HB 616, as it relates to the original petition, is no longer in effect. While the dissenters correctly point out that we have previously decided disputes that are moot when the matter involves "a pressing public interest," *see, e.g., Bleiler v. Chief, Dover Police Dep't*, 155 N.H. 693, 695 (2007), on the scant record remaining before us we decline to continue jurisdiction. Ensuring a constitutionally adequate education is undoubtedly a matter of pressing public interest. However, in contrast to other matters of sufficient public interest where the relevant authorities under review remained in effect, *see, e.g., Sullivan v. Town of Hampton Bd. of Selectmen*, 153 N.H. 690, 692 (2006), the relevant statutory provisions at issue in this case are no longer in effect and retaining jurisdiction would not cure "continued uncertainty in the law." *Proctor v. Butler*, 117 N.H. 927, 930-31 (1977) (quotation omitted), *overruled in part on other grounds by In re Sanborn*, 130 N.H. 430 (1988).

For the reasons stated herein, we decline to exercise our discretion to retain jurisdiction. Accordingly, we dismiss the appeal without prejudice as moot.

*Dismissed.*

DALIANIS and GALWAY, JJ., concurred; BRODERICK, C.J., dissented; DUGGAN, J., dissented.

BRODERICK, C.J., dissenting. While I agree with Justice Duggan that this case is not moot, I write separately because I would not order a remand.

Fifteen years ago, this court held that under Part II, Article 83 of the New Hampshire Constitution, the State has an obligation to fund a constitutionally adequate elementary and secondary education for all public school students, no matter their geography. *Claremont School Dist. v. Governor*, 138 N.H. 183 (1993) (*Claremont I*). We observed that, in the first instance, it was for the legislature and the Governor to define the parameters of the education mandated by the State Constitution. *Id.* at 192.

Four years later, in 1997, we held that the then-existing system for financing elementary and secondary public education in our state was unconstitutional because rather than paying the full cost of a constitutionally adequate public education, the State was utilizing local and disproportional tax levies to satisfy part of its exclusive obligation. *Claremont School Dist. v. Governor*, 142 N.H. 462 (1997) (*Claremont II*). In that opinion we made it clear that the State was responsible to: (1) define the content of a constitutionally adequate public education; (2) fund it; (3) ensure that any property tax used to pay for it was administered in a manner that was equal in valuation and uniform in rate; and (4) develop a system of accountability to ensure the delivery of a constitutionally adequate public education. We expressed our confidence that the legislature and the Governor would "act expeditiously" to satisfy these requirements. *Id.* at 477.

A year later, in 1998, the State sought a two-year extension to fulfill the mandates of *Claremont II*. *Claremont School Dist. v. Governor (Motion for Extension of Deadlines)*, 143 N.H. 154 (1998). In so doing, it acknowledged that it had not yet constructed "a system to ensure delivery of a constitutionally adequate education." *Id.* at 160 (quotation omitted). We denied the requested extension and cautioned that "[a]bsent extraordinary circumstances, delay in achieving a constitutional system [would be] inexcusable." *Id.* at 158.

The following year, we determined that the State's proposal to phase-in a statewide property tax to fund constitutional adequacy would result in unconstitutional tax disparities. *Claremont School Dist. v. Governor (Statewide Property Tax Phase-In)*, 144 N.H. 210 (1999). At that time, the State expressly represented that it was making progress in developing a delivery and accountability system to address how to determine if a school or district was, in fact, providing a constitutionally adequate public education for its students. Based upon that representation, we denied, without prejudice, the plaintiff school districts' request for the appointment of a master to take evidence and make recommendations to this court on a satisfactory system for accountability. *Id.* at 212; *see Claremont School*

*Dist. v. Governor (Accountability)*, 147 N.H. 499, 504 (2002). We described the request to appoint a master as "premature," not unreasonable or unfounded. *Claremont (Statewide Property Tax Phase-In)*, 144 N.H. at 212. In so ruling, we intended that the political branches have an unimpeded opportunity to fulfill their constitutional responsibilities. Regrettably, the accountability legislation touted by the State in 1999 "was subsequently sent back to committee and never became law." *Claremont (Accountability)*, 147 N.H. at 506.

In 2001, the legislature passed Senate Bill 164, "an Act establishing a comprehensive statewide accountability system concerning an adequate education." *Id.* (quotation omitted). Because the State, however, was not required under the legislation to assist schools or school districts where students failed to meet prescribed standards, Governor Shaheen vetoed the bill. In her veto message she said, "I cannot support legislation which is more symbolic than substantive on an issue as critically important as school accountability." *Id.* (quotation omitted). Four years had passed since the *Claremont II* decision and still no system of accountability satisfying the requirements of the State Constitution was in place.

In 2002, we issued an opinion addressing the accountability standards required to provide a constitutionally adequate education. We concluded that the standards then in place did not pass constitutional muster. *Id.* at 500. The accountability rules the State had implemented allowed it to be relieved of its duty when a school district's tax base or other financial condition contributed to noncompliance with minimum standards. We held that there was "no accountability when the rules on their face tolerate[d] noncompliance with the duty to provide a constitutionally adequate education," *id.* at 513. Again, we expressed our hope "that the legislative and executive branches [would] continue to work to satisfy their constitutional duty to ensure the delivery of a constitutionally adequate education to [all] public school students" in our state. *Id.* at 521. Our opinion made clear that without a system to ensure real accountability, the State's duty to provide a constitutionally adequate education would become illusory.

Since 2002, the only action taken by the legislature to fulfill its acknowledged obligation to ensure accountability in providing a constitutionally adequate education for public school students was the establishment, within the last few months, of a "joint legislative oversight committee on accountability for an adequate education." Laws 2008, 173:13, I. The committee is to "review and study the assessment and assistance methods, reporting requirements, and other methods of accountability presently being used by the department of education and local school districts," *id.*, 173:13, II, and "report its findings and recommendations concerning the sufficiency of existing statutory law to provide accountability for the

delivery of the opportunity for an adequate education . . . and the possible need for additional legislation," *id.*, 173:13, III. This initiative occurred nine years after the State represented that it was making progress in developing a system of accountability and eleven years after we identified the State's duty to do so.

It is readily apparent that despite its near decade long assurances that our public education system would contain the requisite controls to ensure the delivery of a constitutionally adequate education, the State has not met its acknowledged obligation. This court, for the past fifteen years, has repeatedly, respectfully and appropriately deferred to the political branches to resolve the critical issues the numerous school funding decisions have identified. *See Claremont I*, 138 N.H. at 192 ("We do not define the parameters of the education mandated by the constitution as that task is, in the first instance, for the legislature and the Governor."); *Claremont II*, 142 N.H. at 475 ("[W]e were not appointed to establish educational policy, nor to determine the proper way to finance its implementation . . . we leave such matters . . . to the two coequal branches of government . . . ." ); *Opinion of the Justices (School Financing)*, 142 N.H. 892, 903 (1998) ("It is neither our task nor intent to manage the public school systems of the State . . . ." ); *Claremont (Extension of Deadlines)*, 143 N.H. at 160 (declining invitation to determine whether the adopted definition of an adequate education is facially unconstitutional where State concedes it has not completed its efforts); *Opinion of the Justices (Tax Plan Referendum)*, 143 N.H. 429, 445 (1999) ("[W]e have nothing to do with the propriety, expediency, or policy of any law; . . . these considerations concern the legislature, and not us . . . ." (quotation omitted)); *Opinion of the Justices (Reformed Public School Financing System)*, 145 N.H. 474, 478 (2000) (content of a constitutionally adequate education must be defined, in the first instance, by the legislature); *Claremont (Accountability)*, 147 N.H. at 521 ("As in the past, we are confident that the legislature and the Governor will fulfill their responsibility . . . ." ).

Deference, however, has its limits. Constitutional rights must be enforced or they cease to be rights. The orders of this court going back more than a decade cannot be trumped by extended and repeated noncompliance. I would reject Chapter 173 as facially unconstitutional for, at a minimum, failing to contain a system of accountability. "In light of the procedural history of this litigation, including . . . [the State's] previous statements on this issue, and the application of settled law, this conclusion should be neither surprising nor unanticipated." *Claremont (Accountability)*, 147 N.H. at 519.

I would strongly encourage the political branches to complete their unfinished work in funding, providing for, and ensuring a constitutionally

adequate education for each public school student in our state so that the long unfulfilled promise of our State Constitution can finally be realized. If the legislative and executive branches cannot, despite their ongoing efforts, satisfy the constitutional mandates of *Claremont II* and its progeny by the end of the 2009 legislative session, I would be open to a request that this court appoint a master, as was requested almost a decade ago, to make recommendations to this court as to how the state's obligations for public education can be fulfilled. I would hope that day does not arrive, but recognized and important constitutional rights need to be enforced. Certainty and finality are long past due.

DUGGAN, J., dissenting. In *Londonderry School District SAU #12 v. State of New Hampshire*, 154 N.H. 153 (2006), we affirmed the decision of the Superior Court (*Groff*, J.) declaring House Bill (HB) 616, an education funding law, unconstitutional. In response, the legislature passed HB 927, Laws 2007, ch. 270 (Chapter 270), which defines the opportunity for an adequate education and established a Joint Legislative Oversight Committee (Joint Committee) to study the cost of providing the opportunity for an adequate education. We then requested the parties to submit memoranda addressing how we should proceed in light of the new legislation. For the reasons that follow, I would dismiss this appeal without prejudice and remand to the superior court.

On July 1, 2005, HB 616 became effective. The purpose of HB 616 was to ensure an equitable education and target aid to communities with low property values. HB 616 established a new education funding formula for municipalities and provided criteria for municipalities to receive local tax capacity aid, targeted per pupil aid, and statewide enhanced education tax capacity aid. The plaintiffs, Londonderry School District SAU #12, Merrimack School District SAU #26 and New Hampshire Communities for Adequate Funding of Education, filed a petition for declaratory relief in this court, requesting that we find HB 616 unconstitutional. We dismissed the action without prejudice after concluding that, "while substantial questions of constitutional law are presented by this case, we believe further factual development is necessary in the superior court before those questions are decided." The plaintiffs then filed a petition for declaratory judgment in superior court and moved for summary judgment.

The plaintiffs' motion for summary judgment challenged the constitutionality of HB 616 on the grounds that the statute: (1) failed to define, determine the cost of, and ensure delivery of a constitutionally adequate education; (2) required a number of municipalities to fund a constitutionally adequate education through local taxes; (3) all but eliminated so-called "donor communities" and imposed an unreasonable and disproportionate

tax burden on the property-poor municipalities with respect to funding education; and (4) created a class of former donor communities that retain all revenue they raise through the state-wide enhanced education tax, resulting in a violation of equal protection. The trial court found that the legislature failed to define a constitutionally adequate education, failed to determine the cost of an adequate education, failed to satisfy the requirement of accountability, and created a non-uniform tax rate. The trial court determined that HB 616 was facially unconstitutional and granted the plaintiffs' motion. *See Claremont Sch. Dist. v. Governor (Accountability)*, 147 N.H. 499, 505 (2002) (providing four mandates to "define an adequate education, determine the cost, fund it with constitutional taxes, and ensure its delivery through accountability"). The State appealed the trial court's ruling.

In *Londonderry*, we affirmed the trial court's finding that the State failed to define a constitutionally adequate education and stayed the trial court's remaining findings. *Londonderry Sch. Dist.*, 154 N.H. at 155. We retained jurisdiction of the core definitional issues with the expectation that the political branches would define with specificity the components of a constitutionally adequate education before the end of fiscal year 2007. *Id.*

In response to *Londonderry*, the legislature enacted Chapter 270 and created the Joint Committee. On February 1, 2008, the Joint Committee submitted a report to the legislature and the Governor on its findings and recommendations as to the cost of the opportunity for an adequate education. By order dated June 25, 2008, we instructed the parties to file brief memoranda "addressing whether, in light of recent actions of the legislature . . . , this case should be dismissed without prejudice, or remanded to the superior court for further consideration and such further proceedings as it may deem appropriate."

In response, the State requests that we dismiss this case, arguing any challenge to HB 616 is moot after the enactment of Chapter 270, and that no exception to the mootness doctrine applies. The President of the Senate and Speaker of the House filed a joint *amicus* memorandum in support of the State. They argue that the passage of Chapter 270 and the work of the Joint Committee have satisfied the legislature's duty under our prior holding in this case. They further argue that the creation of the Joint Legislative Committee on Fiscal Capacity, Transition Aid and Diseconomies of Scale will satisfy the remaining burden placed upon the State to determine the cost of an adequate education. Because of the progress made and the changes implemented, they argue that the plaintiffs' case is moot and should be dismissed.

The plaintiffs request that we retain jurisdiction while the Joint Committees and legislature bring the State into full compliance with the four

mandates. The plaintiffs concede "that the State has fulfilled its obligation to define a constitutionally adequate education." The plaintiffs further state that with Senate Bill 539, enacted as Laws 2008, chapter 173 (Chapter 173), the State has addressed the second and third mandates comprising the State's duty to provide an adequate education. The plaintiffs argue, however, that flaws exist in the attempt to comply with the second and third mandates, and further argue that Chapter 173 acknowledges the State's failure to meet the fourth mandate.

Regarding the second mandate, determining the cost of an adequate education, the plaintiffs argue that Chapter 173 sets an insufficient universal cost of education per pupil. Specifically, they argue that, in determining cost, the legislature factored in unreasonably high student-teacher ratios, low teachers' salaries, and insufficient funding for special needs students. As to the third mandate, the plaintiffs point out that Chapter 173 "establishes a two-year phase-in period during which munici-palities will receive funding tied to the funding they receive in FY 2009." This, they argue, allows the legislature to carry forward the "constitution-ally flawed" statewide distributions authorized in HB 616. The plaintiffs thus propose that we retain jurisdiction and that the plaintiffs, rather than challenge the constitutionality of the new legislation, "will work with the legislature during the 2009 legislative session to meet the State's constitu-tional obligation to cost out the opportunity for an adequate education."

National Education Association-New Hampshire(NEA-NH) filed an *amicus* brief memorandum in support of the plaintiffs. NEA-NH argues that the State has only reached the midpoint in fulfilling its responsibilities under *Londonderry*, and that dismissal of this case would frustrate further progress. In particular, NEA-NH argues that the student-teacher ratio is miscalculated, and that too few provisions are made for classroom aides, substitute teachers, and school administrators. NEA-NH also challenges the adequacy of funding for food services and pre-kindergarten programs. As such, the NEA-NH requests that we retain jurisdiction over the matter until the State fulfills its remaining obligations.

The State, in its memorandum, addresses some of the factual issues raised by the plaintiffs. The State points out that the legislature heard the evidence presented and considered information from its own experts in determining the appropriate teachers' salaries. The State further argues that student-teacher ratios are acceptable because they "are those enacted in the State's school approval standards," and that the legislature, in its formulation, specifically took into consideration special needs students. As to differentiated aid, "the [Joint] Committee found that its ranges for additional aid for students with special needs exceed those of any other state." The State maintains that the universal cost per pupil also includes

"technology, instructional materials and supplies, teacher professional development, facilities operation and maintenance, and transportation," and "many of these amounts are the same or higher than those used by other states." The State argues that "it is apparent that there would need to be in-depth fact-finding before [the plaintiffs] could prove their assertions that these legislative decisions do not meet constitutional muster." Such a claim, the State argues, must be brought through a new suit challenging the constitutionality of the recent legislation.

Initially, I will address the majority's decision that this case is moot. The doctrine of mootness is designed to avoid deciding issues that "have become academic or dead." *Sullivan v. Town of Hampton Bd. of Selectmen*, 153 N.H. 690, 692 (2006); *Petition of Brooks*, 140 N.H. 813, 816 (1996). It is well-established that "[m]ootness is not subject to rigid rules, but is a matter of convenience and discretion." *Royer v. State Dep't of Employment Sec.*, 118 N.H. 673, 675 (1978). Thus, "[a] decision upon the merits may be justified where there is a pressing public interest involved, or future litigation may be avoided." *Sullivan*, 153 N.H. at 692. This is a disjunctive standard, and I rely here upon the public interest prong.

There is a pressing public interest when there are "substantial social costs stemming from continued uncertainty in the law." *Proctor v. Butler*, 117 N.H. 927, 930-31 (1977) (quotation omitted); *see Bleiler v. Chief, Dover Police Dep't*, 155 N.H. 693, 695 (2007) (sufficient public interest in determination of whether petitioner's concealed weapons permit had been properly revoked warranted resolution of legal issues, even though petitioner's permit had expired); *Bio Energy, LLC v. Town of Hopkinton*, 153 N.H. 145, 150 (2005) (pressing public interest in issues arising out of the use of construction and demolition woodchips as a fuel source in facility even though moratorium in place on the disposal of construction and demolition waste by incineration); *Sullivan*, 153 N.H. at 692-93 (sufficient public interest in resolution of town budget to forgo mootness concerns and address issues presented, even though town was halfway through its fiscal year).

The issue of financing public education in New Hampshire has received much state-wide attention since 1992. Although early debates resulted in the *Claremont* decisions, *see Claremont Sch. Dist. v. Governor (Accountability)*, 147 N.H. 499 (2002); *Claremont Sch. Dist. v. Governor (Statewide Property Tax Phase-In)*, 144 N.H. 210 (1999); *Claremont Sch. Dist. v. Governor (Motion for Extension of Deadlines)*, 143 N.H. 154 (1998); *Claremont Sch. Dist. v. Governor (Claremont II)*, 142 N.H. 462 (1997); *Claremont Sch. Dist. v. Governor (Claremont I)*, 138 N.H. 183 (1993), the issue is far from settled. There is no question that the funding of public education can have substantial social costs. No party to this case would

dispute the fact that the education of New Hampshire children has wide-reaching consequences; they instead dispute whether the legislature has fulfilled its constitutional obligation to provide an adequate education. Considering the substantial social costs involved in funding an adequate education and the history surrounding this debate in New Hampshire, I find sufficient public interest in resolving the now perennial issue of whether the State has fulfilled its duty to provide New Hampshire children a constitutionally adequate education. I thus disagree that this case is moot.

I next address whether we should retain jurisdiction of this case. I remain cognizant that it is the role of the political branches to define the substantive content of a constitutionally adequate education. "[W]e were not appointed to establish education policy, nor to determine the proper way to finance its implementation," *Claremont II*, 142 N.H. at 475. However, it is our responsibility to "uphold and implement the New Hampshire Constitution." *Id.*

Although the plaintiffs concede that the legislature has fulfilled its obligation to define and determine the cost of an adequate education, the parties' memoranda show considerable factual disagreement as to the remaining obligations. The Joint Committee held eighteen meetings and heard testimony from the public, educators, administrators, education stakeholders, and state as well as national education policy and finance professionals. Following the Joint Committee's report of its findings and recommendations, the plaintiffs disputed the base numbers used to determine the universal cost per pupil as well as the construction of the formula used to reach that figure. The submitted memoranda demonstrate disagreement over, for example, student-teacher ratios, teachers' salaries, and who makes up necessary personnel. These are fact-driven disputes that are normally decided by a trial court. I agree with the Chief Justice that there exist other unresolved issues as to whether the legislature has complied with the mandate to provide a constitutionally adequate education, but these issues should be resolved in the first instance by the superior court. I, therefore, would dismiss this appeal without prejudice and remand to the superior court.