Rockingham
No. 2005-464

WILLIAM H. SULLIVAN *& a.*

v.

TOWN OF HAMPTON BOARD OF SELECTMEN

Argued: May 11, 2006
Opinion Issued: June 27, 2006

*Cook & Molan, P.A.*, of Concord (*Richard E. Molan* on the brief, and *John S. Krupski* orally), for the plaintiffs.

*Mark S. Gearreald*, of Hampton, on the brief and orally, for the defendant.

*C. Christine Fillmore*, of Concord, by brief, for the New Hampshire Local Government Center, as *amicus curiae*.

HICKS, J. The plaintiffs, William H. Sullivan, Edward Buck and Thomas Gillick, are three taxpayers (taxpayers) who appeal the order of the Superior Court (*McHugh*, J.) granting defendant Town of Hampton Board of Selectmen's (selectmen) motion to dismiss for failure to state a claim upon which relief may be granted. We affirm.

The record supports the following facts. The Town of Hampton is a Senate Bill 2 (SB 2) jurisdiction, meaning that it has adopted the official balloting procedures for the town meeting form of government in RSA 40:13 (Supp. 2005). RSA 40:13 prescribes balloting procedures on all warrant issues put to voters, including annual town budgets. An SB 2 town budget committee develops an "operating budget" that the selectmen submit to voters for approval. When submitted to voters, the ballot reflects only a single bottom line sum of the entire "operating budget." If adopted by voters, that "operating budget" represents the town's annual appropriated line item expenditures.

The legislature amended RSA 40:13 in 2004 to provide for a "default budget" if voters fail to adopt the proposed "operating budget." The "default budget" is calculated as the prior year's budget, adjusted up or down by other obligations and reduced by one-time expenditures. If voters fail to adopt the proposed "operating budget," they are either deemed to have approved the "default budget," or the governing body may choose to have a special town meeting to plan and submit a "revised operating budget" to voters.

The 2004 amendment to RSA 40:13 also included new procedures for public disclosure of the line item appropriations within a "default budget," presumably to enhance the transparency of the "default budget" calculation. At the first budget meeting, prior to presenting the budget committee's "operating budget" for approval, the selectmen must disclose on a special form the "default budget" amount and how it was calculated.

RSA 32:10, I (Supp. 2005) gives the selectmen discretionary authority to transfer funds within a previously adopted budget as unplanned needs arise. The issue presented for review is whether RSA 40:13, as amended in 2004, limits the selectmen's authority pursuant to RSA 32:10 to transfer line item appropriations within a "default budget."

In March 2005, the Town of Hampton presented its municipal "operating budget" of $26,392,546 to its voters alongside the "default budget" of $23,552,795. The voters failed to adopt the "operating budget," and the selectmen chose to implement the "default budget."

The selectmen then solicited proposals from each town department for a 15% reduction in their individual budgets to offset the approximate 15% ($2.8 million) shortfall in the town's anticipated operating budget. The selectmen subsequently held four weekly public meetings during which they altered appropriations for the 2005 budget year. This resulted in a 2005 budget that did not exceed the bottom line default budget total in the previously disclosed "default budget," but deviated from the prior year's individual appropriations in twenty-nine of the thirty-four line items.

The taxpayers filed a petition for injunctive relief, writ of mandamus and other relief on April 22, 2005, in the superior court. The selectmen moved to dismiss. A temporary hearing was held by offers of proof on May 5, 2005. The superior court granted the selectmen's motion to dismiss.

On appeal, the taxpayers argue that the trial court erred in finding that RSA 32:10 provides the town selectmen "unfettered" discretionary authority to change line item appropriations within the "default budget." Further, the taxpayers argue that even if the selectmen did properly exercise their discretionary authority to make line item changes within the budget, the selectmen failed to follow the prescribed statutory procedures for implementing the budget because the altered budget constituted a "revised operating budget" within the meaning of RSA 40:13, X, requiring notice to and approval by voters. Both are questions of first impression.

■ We first address whether to dismiss this case as moot. The taxpayers challenge the implementation of Hampton's 2005 budget. The underlying dispute is substantially moot because Hampton is now well into the 2006 budgetary year. The doctrine of mootness is designed to avoid deciding issues that "have become academic or dead." *Petition of Brooks*, 140 N.H. 813, 816 (1996). However, the question of mootness is not subject to rigid rules, but is regarded as one of convenience and discretion. *Herron v. Northwood*, 111 N.H. 324, 327 (1971). A decision upon the merits may be justified where there is a pressing public interest involved, or future litigation may be avoided. *Id.* We find sufficient public interest in the

outcome of this controversy to justify an exception to the doctrine of mootness. *Id.*

Because the interpretation of a statute is a question of law, we review the trial court's ruling *de novo. Starr v. Governor*, 151 N.H. 608, 610 (2004). When interpreting a statute, we consider the language of the statute itself, and if possible, construe the language according to its plain and ordinary meaning. *Id.*

The taxpayers do not argue that the selectmen lacked the statutory authority to make adjustments to a "default budget." Rather, they argue that the selectmen improperly exercised this authority by immediately adjusting the "default budget" in response to the voters' failure to adopt the "operating budget." In support of their position, they point to language in RSA 32:10, I, that states:

> If changes arise during the year following the annual meeting that make it necessary to expend more than the amount appropriated for a specific purpose, the governing body may transfer to that appropriation an unexpended balance remaining in some other appropriation.

The taxpayers further argue that no evidence was presented that records were kept, as required by RSA 32:10, I(b), which would allow "any citizen requesting such records pursuant to RSA 91-A:4 ... [to] ascertain the purposes of appropriations to which, and from which, amounts have been transferred." RSA 32:10, I(b).

Finally, the taxpayers urge that the 2004 amendment to RSA 40:13 requiring prior disclosure of the default budget calculation is meaningless if the selectmen have "unfettered" authority to alter the individual line items immediately after the "default budget" is implemented.

The selectmen respond by arguing that the failure to adopt the "operating budget" was a change in circumstances sufficient to merit changing the default appropriated amounts. They argue that transferring appropriations within an adopted default budget is permissible as long as they do "not exceed the total amount appropriated at the town or district meeting" as required in RSA 32:10, I(a) or transfer appropriations for a purpose that was not originally reflected on the default budget disclosure form.

Discretionary transfer authority ensures that selectmen have the requisite flexibility to address unplanned needs by redirecting appropriated funds. This authority is expressly set forth in the language of RSA 32:10, I. We recognized this authority in *McDonnell v. Derry*, 116 N.H. 3, 7 (1976), and rejected the voters' attempt to lock the selectmen into

an appropriated amount for individual line items. We held that the town voters may not restrict the exercise of the selectmen's transfer authority by conditioning it upon the requirements of "good cause" and approval by the budget committee. *Id.*

RSA 40:13 was amended in 2004 to both define the "default budget" and to require that selectmen disclose the calculation of the individual line item appropriations comprising the "default budget" before voting on the proposed "operating budget." RSA 40:13, IX-XI (Supp. 2005). We find nothing in the language or structure of amended RSA 40:13, however, that restricts the discretionary authority of selectmen to transfer appropriations within an adopted default budget. *See* RSA 40:13. The selectmen may underspend in one category to free up budget funds to overspend in another provided they act within the limitations of RSA 32:10, I.

We agree with the selectmen that the failure to pass the "operating budget" was a sufficient change in circumstances within the meaning of RSA 32:10, I, to justify the use of transfer authority. Holding otherwise would force the selectmen to sit idly by awaiting the onset of a foreseeable budget crisis instead of acting to prevent it. We find the taxpayers' argument that there was no "unexpended balance remaining in some other appropriation" within the meaning of RSA 32:10, I, without merit because the remaining funds in each default budget line item were "unexpended" when the transfers were made.

We reject the taxpayers' argument that no evidence was presented at trial of records which would allow "any citizen requesting such records pursuant to RSA 91-A:4 . . . [to] ascertain the purposes of appropriations to which, and from which, amounts have been transferred." RSA 32:10, I(b). As the selectmen pointed out at the trial court's motion hearing, the transfers were made over the course of four weekly televised meetings that were open to the public. Minutes of these meetings and recorded television broadcasts remain accessible to the public.

The taxpayers next argue that even if the selectmen had the statutory authority to make such discretionary changes to the "default budget," the extent to which changes were made converted it into a "revised operating budget" and triggered the necessary procedural steps to implement such a budget. *See* RSA 40:13, XVI.

We disagree. Although RSA 40:13 does not define a "revised operating budget," it does provide a definition for a "default budget." RSA 40:13, IX(b). The statutory language is plain and unambiguous. *Johnson v. City of Laconia*, 141 N.H. 379, 380 (1996). RSA 40:13, IX(b) defines the

"default budget" as an "amount" and prescribes how to calculate that "amount." When put to voters, the warrant article will reflect the "default budget" as only a dollar "amount." RSA 40:13, XI(c). Thus, the selectmen needed only to stay within the original budgeted "amount" for the resulting budget to fall within the meaning of "default budget." *See* RSA 40:13, IX(b). Had the selectmen increased the bottom line of the "default budget," we might be inclined to agree that such a "revised operating budget" was the result. However, merely transferring appropriations among budget categories that had already been appropriated funds without increasing the bottom line did not trigger the procedural requirements that apply to a "revised operating budget."

The taxpayers alternatively ask that we remand this matter for fact-finding on two issues: (1) whether the selectmen properly exercised their RSA 32:10, I, transfer authority; and (2) whether the selectmen's actions created a "revised operating budget."

■ We deny this request for three reasons. First, we note that this request is raised for the first time on appeal as the taxpayers never requested an evidentiary hearing on these matters. It is well established that we will not consider issues raised on appeal that were not presented in the trial court. *Daboul v. Town of Hampton*, 124 N.H. 307, 309 (1983). Second, a challenge to the exercise of transfer authority is inappropriate because RSA 32:10, I(b) expressly denies citizens the "authority to dispute or challenge the discretion of the governing body in making such transfers." RSA 32:10, I(b). Finally, whether the transfers created a "revised operating budget" is a matter of statutory interpretation for this court, and we are "the final arbiter of the intent of the legislature as expressed in the words of a statute." *McDonald v. Town of Effingham Zoning Bd. of Adjustment*, 152 N.H. 171, 174 (2005).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.