Dover District Court
No. 2006-426

### EDWARD J. BLEILER

v.

### CHIEF, DOVER POLICE DEPARTMENT

Argued: May 9, 2007
Opinion Issued: July 18, 2007

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Richard J. Lehmann* on the brief and orally), for the petitioner.

*Donahue, Tucker & Ciandella, PLLC*, of Portsmouth (*Christopher L. Boldt* on the brief and orally), for the respondent.

*Kelly A. Ayotte*, attorney general (*Elizabeth J. Baker*, attorney, on the brief and orally), for the State, as *amicus curiae*.

DALIANIS, J. The petitioner, Edward J. Bleiler, appeals from the order of the Dover District Court (*Weaver*, J.) upholding the decision of the respondent, the Chief of the Dover Police Department, to revoke the petitioner's permit to carry a concealed weapon. We affirm.

On March 16, 2006, the petitioner went to the office of the Dover City Attorney to discuss his recently filed lawsuit challenging the contracts of several city employees, including the city attorney. During the conversation, the petitioner removed a loaded pistol from his pocket and placed it on the desk as a "prop" in a story he was telling, which involved threats that allegedly had been made upon him several years ago by organized crime members. The city attorney's paralegal overheard the conversation and described it as "unusual and heated."

After the petitioner left, the city attorney spoke to his paralegal, who felt worried, particularly after learning that the petitioner had had a loaded weapon in the office. The city attorney called the respondent and informed him about the incident. He also told him that the petitioner planned to attend the next city council meeting about the respondent's contract.

On March 31, 2006, the respondent notified the petitioner by letter that he had decided to revoke the petitioner's license to carry a concealed firearm because the petitioner was "not suitable at this time" to carry a concealed weapon. *See* RSA 159:6-b (2002). The letter informed the petitioner that "[t]he proper handling of firearms mandates that a weapon not be displayed in any manner which may cause concern to another unless there is justification under New Hampshire law" and that the way that the petitioner handled his weapon in the city attorney's office was "unsafe and inappropriate." In addition, the letter explained that the petitioner's license was being revoked because: (1) he had previously made improper comments about using his firearm, such as "we let Smith & Wesson handle it" when referring to disputes, and had displayed his weapon in a manner that would cause concern; (2) a local neighborhood association had hired a

police officer to attend its next meeting because of concern about the petitioner's past actions and expectations that he would carry a concealed weapon to the meeting; and (3) the petitioner refused to speak to investigators to explain his actions.

The petitioner appealed the revocation of his license to the district court, which affirmed it following a one and one-half day evidentiary hearing. *See* RSA 159:6-c (2002). The trial court found that the petitioner's "reckless behavior, his lying to others about that behavior, his misleading statements to the press, his manner and conduct, and his failure to cooperate in the police investigation as to his suitability to retain his license to carry a concealed weapon [constituted] just cause to revoke his license." *See* RSA 159:6-b. The petitioner does not challenge these factual findings on appeal.

The district court also ruled that the statute under which the petitioner's license had been revoked, RSA 159:6-b, did not impinge upon his right to keep and bear arms guaranteed by the Second Amendment to the Federal Constitution and Part I, Article 2-a of the State Constitution, and was not void for vagueness. This appeal followed.

I

■ We first address whether to dismiss this appeal as moot. The respondent argues that the appeal is moot because the petitioner's permit to carry a concealed weapon expired as of January 2007, and he has not reapplied for one. The doctrine of mootness is designed to avoid deciding issues that have become academic. *Sullivan v. Town of Hampton Bd. of Selectman*, 153 N.H. 690, 692 (2006). However, the question of mootness is not subject to rigid rules; it is regarded as one of convenience and discretion. *Id.* A decision upon the merits may be justified where there is a pressing public interest involved, or future litigation may be avoided. *Id.* We find sufficient public interest in the outcome of this controversy to justify an exception to the doctrine of mootness. *Id.* at 692-93.

II

We next address whether to dismiss this appeal because the petitioner waived all of his appeal arguments by not including them as questions in his notice of appeal. *See* SUP. CT. R. 16(3)(b). The respondent observes that the questions in the petitioner's notice of appeal concern RSA 159:6-c, not RSA 159:6-b, upon which his brief focuses. We accept the petitioner's assertion that the reference to RSA 159:6-c was a typographical error and conclude that he has not waived his arguments concerning RSA 159:6-b. We agree with the respondent, however, that the petitioner has waived all

issues that he raised in his notice of appeal, but did not brief. *See In re Estate of King*, 149 N.H. 226, 230 (2003).

III

The petitioner first argues that RSA 159:6-b violates his state constitutional right to substantive due process because it impairs his right under the State Constitution to keep and bear arms. *See* N.H. CONST. pt. I, arts. 2-a, 12. The constitutionality of a statute is a question of law, which we review *de novo. Gonya v. Comm'r, N.H. Ins. Dep't*, 153 N.H. 521, 524 (2006). "In reviewing a statute, we presume it to be constitutional and we will not declare it invalid except upon inescapable grounds." *Id.* Because the petitioner argues only under the State Constitution, we base our decision upon it alone, citing federal cases for guidance only. *Id.*

Part I, Article 2-a of the State Constitution provides: "All persons have the right to keep and bear arms in defense of themselves, their families, their property and the state." This provision was added to the constitution in 1982.

RSA 159:6-b is part of a statutory scheme that requires individuals to obtain permits to carry loaded, concealed weapons. *See* RSA 159:4 (2002). RSA 159:4 makes it a crime for an individual to carry a loaded pistol or revolver in any vehicle or "concealed upon his person, except in his dwelling, house or place of business, without a valid license." In addition to exempting law enforcement personnel, court security and members of the armed services, the statutory scheme exempts the regular and ordinary transport of pistols or revolvers as merchandise from this license requirement. *See* RSA 159:5 (2002). New Hampshire has required some form of license to carry a concealed weapon since at least 1923. *See* Laws 1923, 118:4.

Licenses are issued pursuant to RSA 159:6 (Supp. 2006), which provides:

> The selectmen of a town or the mayor or chief of police of a city or some full-time police officer ..., upon application of any resident of such town or city, or the director of state police, ... upon application of a nonresident, shall issue a license to such applicant authorizing the applicant to carry a loaded pistol or revolver ..., if it appears that the applicant has good reason to fear injury to the applicant's person or property or has any proper purpose, and that the applicant is a suitable person to be licensed. Hunting, target shooting, or self-defense shall be considered a proper purpose. The license shall be valid for all allowable purposes regardless of the purpose for which it was originally issued.

Licenses to carry concealed weapons may be "suspended or revoked for just cause, provided written notice of the suspension or revocation and the reason therefore is given to the licensee." RSA 159:6-b, I. If requested, the licensee is entitled to a post-suspension or post-revocation hearing in front of the issuing authority. *Id.* "Any person whose application for a license to carry a loaded pistol or revolver has been denied . . . or whose license to carry a loaded pistol or revolver has been suspended or revoked" may also petition the district court for a hearing upon whether he or she is entitled to a license. RSA 159:6-c. "[T]he statute contemplates that the district court . . . hear evidence and make its own determination [upon] whether the petitioner is entitled to a license." *Kozerski v. Steere*, 121 N.H. 469, 472 (1981) (quotation omitted). Additionally, "[a]ny person aggrieved by a violation of the licensing sections of [RSA chapter 159 (2002 & Supp. 2006)] by a licensing entity may petition the superior court of the county in which the alleged violation occurred for injunctive relief." RSA 159:6-e (2002).

The petitioner argues that because the state constitutional right to bear arms is a fundamental right, we must review the constitutionality of RSA 159:6-b under strict scrutiny. The respondent and *amicus* counter that the right at issue is the right to carry a concealed weapon, which is not a fundamental right, and that, therefore, we may review the statute's constitutionality under rational basis.

We agree with the petitioner that the respondent and *amicus* define the right at issue too narrowly. We define the question before us as whether revoking the petitioner's license to carry a concealed weapon for just cause impermissibly infringed upon his state constitutional right to bear arms. We assume, without deciding, that the state constitutional right to bear arms is a fundamental right. Because of this assumption, we need not address the petitioner's alternative argument that requiring him to carry a loaded weapon in plain view subjected him to "stigma" and thus deprived him of a constitutionally protected liberty interest. *See Short v. School Admin. Unit 16*, 136 N.H. 76, 83-84 (1992); *Board of Regents v. Roth*, 408 U.S. 564, 572-74 (1972).

We reject the petitioner's assertion, however, that if the state constitutional right to bear arms is fundamental, we must apply strict scrutiny to our review of RSA 159:6-b. While "generally, when governmental action impinges upon a fundamental right, such matters are entitled to review under strict judicial scrutiny," *Akins v. Sec'y of State*, 154 N.H. 67, 71 (2006), "[n]ot every restriction of a right classified as fundamental incurs 'strict' scrutiny." Fallon, *Some Confusions About Due Process, Judicial Review, and Constitutional Remedies*, 93 COLUM. L. REV. 309, 315 (1993); *cf. Estate of Cargill v. City of Rochester*, 119 N.H. 661, 666-67 (1979) (citing cases and noting that merely because statute

touches upon a right that may be fundamental for some purposes does not mean that it must be evaluated under strict scrutiny for equal protection purposes), *appeal dismissed*, 445 U.S. 921 (1980). "For example," in the federal arena, "the fundamental right to marry has always tolerated reasonable or de minimis burdens." Fallon, *supra* at 315. The United States Supreme Court also has engaged in an "ad hoc balancing" of the individual's liberty interest against the "demands of an organized society" in cases involving the fundamental right to travel, for instance. *Id.* at 317 (quotation omitted).

Additionally, the United States Supreme Court has explained the need to apply a test other than strict scrutiny in the context of an election law challenge as follows: "[T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Thus, even though certain voting rights "are fundamental, not all restrictions imposed by the States ... impose constitutionally suspect burdens on voters' rights ...." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Therefore, the United States Supreme Court applies a balancing test that "weigh[s] the character and magnitude of the asserted injury to the rights ... that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (quotations omitted). Under this test, "when the election law at issue subjects the plaintiff's rights to severe restrictions, the regulation must withstand strict scrutiny to be constitutional. When the election law imposes only reasonable, nondiscriminatory restrictions upon the plaintiff's rights, then the State's important regulatory interests are generally sufficient to justify the restrictions." *Akins*, 154 N.H. at 72 (quotations and citation omitted).

We adopted this balancing test in *Akins*, 154 N.H. at 72, and *Libertarian Party New Hampshire v. State*, 154 N.H. 376, 381 (2006). In those cases, we balanced the legislature's right to regulate elections pursuant to Article I, Section 4, Clause 1 of the Federal Constitution with the citizens' right to vote and be elected. We explained: "Simply because the [rights] under Part I, Article 11 [are] fundamental does not mean that any impingement upon [them] triggers strict scrutiny." *Akins*, 154 N.H. at 71.

We have also declined to apply strict scrutiny in the context of other fundamental rights. In the zoning context, for instance, we have explained that "[a]lthough property ownership rights are fundamental, zoning

ordinances regulating the use of property do not receive strict scrutiny analysis, because [they] regulate property for the public good and balance the use and enjoyment of property of some residents against the use and enjoyment of other residents." *Asselin v. Town of Conway*, 135 N.H. 576, 578 (1992) (quotation omitted); *see Boulders at Strafford v. Town of Strafford*, 153 N.H. 633, 636 (2006) (applying rational basis review to substantive due process challenge to zoning ordinance).

With respect to substantive due process challenges to gun control legislation, such as RSA 159:6-b, "[n]o state's judiciary applies a heightened level of scrutiny, much less strict scrutiny." Winkler, *The Reasonable Right to Bear Arms*, 17 STAN. L. & POL'Y REV. 597, 600 (2006). "[S]tate courts universally reject strict scrutiny or any heightened level of review in favor of a standard that requires weapons laws to be only 'reasonable regulations' on the [right to bear arms]." *Id.* at 599; *see State v. Cole*, 665 N.W.2d 328, 336-37 (Wis. 2003) (citing cases); *see also* Monks, *The End of Gun Control or Protection Against Tyranny?: The Impact of the New Wisconsin Constitutional Right to Bear Arms on State Gun Control Laws*, 2001 WIS. L. REV. 249, 259 ("When a court reviews a gun control statute, the test is almost always whether the gun restriction is a 'reasonable regulation' under the state's police power."). "Even courts that have found [the right to bear arms] to be fundamental have used a reasonableness standard." *Cole*, 665 N.W.2d at 337; *see also Robertson v. City and County of Denver*, 874 P.2d 325, 329-30 (Colo. 1994) (citing cases).

■ We agree with every other state court that has considered the issue: strict scrutiny is not the proper test to apply when evaluating whether gun control legislation, such as RSA 159:6-b, violates substantive due process. Winkler, *supra* at 600. "Strict scrutiny, with its presumption of unconstitutionality, is a standard of review traditionally used in areas where courts deem any burdensome legislation to be 'immediately suspect.'" *Id.* at 599. Gun control legislation, by contrast, "with its legislative motivation of public safety . . . is not inherently suspicious." *Id.* "[T]here has been a long history of weapons regulations," which suggests that "such laws are not inherently invidious." *Id.* at 600.

■ Moreover, as numerous courts in other states have recognized with respect to their state constitutional right to bear arms, *see id.* at 602-03, the New Hampshire state constitutional right to bear arms "is not absolute and may be subject to restriction and regulation." *State v. Smith*, 132 N.H. 756, 758 (1990); *see Arnold v. Cleveland*, 616 N.E.2d 163, 172 (Ohio 1993). "[S]ome regulation of firearms is necessary" because of the "obvious public dangers of guns." Winkler, *supra* at 600. Such regulation is a proper

subject of the legislature's police power. *See Soucy v. State*, 127 N.H. 451, 454 (1985); *see also State v. White*, 64 N.H. 48, 50 (1886); *Carter v. Craig*, 77 N.H. 200, 205 (1914) (general court's power to make "reasonable and wholesome laws" gives it the power to impose "reasonable and wholesome restrictions" on the rights of individuals).

 In light of the compelling state interest in protecting the public from the hazards involved with guns, *see Cole*, 665 N.W.2d at 344, we agree with numerous courts from other jurisdictions that the reasonableness test is the correct test for evaluating a substantive due process challenge to gun control legislation. *See* Monks, *supra* at 259. This test analyzes whether the statute at issue is a "reasonable" limitation upon the right to bear arms. *Cole*, 665 N.W.2d at 338. Such a test differs from traditional rational basis because it "focuses on the balance of the interests at stake, rather than merely on whether any conceivable rationale exists under which the legislature may have concluded the law could promote the public welfare." *Id.*

Applying this test, we now examine whether, in balancing the legislature's authority to enact legislation for the health, safety and welfare of the public, RSA 159:6-b goes too far and unreasonably impinges upon the constitutional right to bear arms. We conclude that RSA 159:6-b is a reasonable limitation upon the state constitutional right to bear arms.

RSA 159:6-b does not prohibit carrying weapons; it merely regulates the manner of carrying them. *See Cole*, 665 N.W.2d at 343; *see also Klein v. Leis*, 795 N.E.2d 633, 638 (Ohio 2003). Moreover, "[t]he statute has a reasonable purpose—it protects the public by preventing an individual from having on hand a [loaded] deadly weapon of which the public is unaware." *Dano v. Collins*, 802 P.2d 1021, 1023 (Ariz. Ct. App. 1990), *rev. dismissed*, 809 P.2d 960 (Ariz. 1991). Additionally, the statute uses a reasonable means to achieve this purpose. Even without a license, individuals retain the ability to keep weapons in their homes or businesses, and to carry weapons in plain view. *See* RSA 159:4. While it "might be argued that [RSA 159:6-b] impede[s] the . . . self-defense [aspect of the constitutional right to bear arms], [t]his argument is countered by two considerations: the danger of [the] widespread presence of [concealed] weapons in public places and police protection against attack in these places." *Cole*, 665 N.W.2d at 344 (quotation omitted). In view of the benefit to public safety and in light of the lack of restriction on possession of loaded weapons in one's home or business, we conclude that RSA 159:6-b does not "subvert unduly" the self-defense aspect of the state constitutional right to bear arms. *Id.* (quotation omitted); *see also Dano,*

802 P.2d at 1022 ("The right to bear arms in self-defense is not impaired by requiring individuals to carry weapons openly.").

■ Therefore, we hold that, given the compelling state interest in public safety, RSA 159:6-b is a reasonable regulation of the time, place and manner in which the state constitutional right to bear arms may be exercised. *See Cole*, 665 N.W.2d at 339.

## IV

The petitioner next asserts that RSA 159:6-b is void for vagueness both facially and as applied under the Fifth and Fourteenth Amendments to the Federal Constitution and Part I, Article 15 of the State Constitution. He argues that the phrase "just cause" as used in RSA 159:6-b is undefined and does not sufficiently limit the discretion of the licensing authority. We first analyze the petitioner's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), citing federal authority for guidance only, *id.* at 233.

Vagueness may invalidate a statute for either of two independent grounds. *See City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.*; *see State v. Porelle*, 149 N.H. 420, 423 (2003). A statute that fails under either test violates the constitutional guarantee of procedural due process. *See State v. Albers*, 113 N.H. 132, 133-34 (1973). "A party challenging a statute as void for vagueness bears a heavy burden of proof in view of the strong presumption favoring a statute's constitutionality." *State v. MacElman*, 154 N.H. 304, 307 (2006).

The "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for in most English words and phrases there lurk uncertainties." *Rose v. Locke*, 423 U.S. 48, 49-50 (1975) (quotation and brackets omitted). Nor is mathematical certainty required. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *see Porelle*, 149 N.H. at 423. Moreover, the specificity required by due process "need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage." *In re Justin D.*, 144 N.H. 450, 453-54 (1999). We note that, while the analysis is different under state and federal law, neither party has argued that our analysis should be different when a licensing statute, and not a criminal statute, is at issue.

The respondent and the *amicus* assert that the petitioner may not bring a facial challenge to RSA 159:6-b because it does not implicate a fundamental right. *See MacElman*, 154 N.H. at 307; *cf. Chapman v. United States*, 500 U.S. 453, 467 (1991) (because "First Amendment freedoms are not infringed by [the criminal statute at issue], . . . the vagueness claim must be evaluated as the statute is applied"). We assume, without deciding, that the petitioner may challenge RSA 159:6-b facially under both the State and Federal Constitutions.

We address the petitioner's facial challenge first. *Cf. Boulders at Strafford*, 153 N.H. at 641-42 (discussing equal protection). *But see Hoffman Estates v. Flipside Hoffman Estates*, 455 U.S. 489, 497, 500 (1982) (where statute does not "reach constitutionally protected conduct," challenger must show that it is vague in all of its applications; if statute is sufficiently clear as applied to party challenging it, it is not facially invalid). The petitioner asserts that the phrase "just cause" in RSA 159:6-b is vague because it fails to provide a person of ordinary intelligence a reasonable opportunity to understand the conduct it proscribes and because it allows for arbitrary enforcement. He argues that RSA 159:6-b is invalid because it "provides absolutely no guidance whatsoever to permit-holders apprising them of what conduct might lead the issuing authority to *revoke* a permit." Additionally, he contends that the phrase "just cause" is "completely without objective standards and rel[ies] entirely on the opinion of the issuing authority or reviewing court."

We interpret the phrase "just cause," however, in the context of the entire statutory scheme. *See In re Justin D.*, 144 N.H. at 453-54. In context, "just cause" refers to a licensee's use of a weapon for an improper purpose or to the licensee's status as an unsuitable person. *See* RSA 159:6. By statute, hunting, target shooting and self-defense are proper purposes. *Id.* RSA 159:3 (2002) and RSA 159:3-a (2002) provide that certain convicted felons are unsuitable for the purposes of obtaining a license to carry a concealed weapon. An individual may also be unsuitable if he or she has a "significant and unexplained arrest history." *Silverstein v. Town of Alexandria*, 150 N.H. 679, 683 (2004). In conjunction with other provisions in the same statutory scheme and our prior decisions, therefore, the phrase "just cause" adequately warns licensees that their licenses may be revoked if they use their weapons for improper purposes or are unsuitable to have such licenses. *See Lillios v. Justices of the New Hampshire Dist. Court*, 735 F. Supp. 43, 47 (D.N.H. 1990).

Contrary to the petitioner's assertions, "[a] law is not necessarily vague because it does not precisely apprise [an individual] of the standards by which [a permitting authority] will make its decision." *Webster v. Town of*

*Candia*, 146 N.H. 430, 435 (2001) (quotations and brackets omitted). In *Derry Sand & Gravel, Inc. v. Town of Londonderry*, 121 N.H. 501, 505 (1981), for instance, we upheld a dump ordinance that permitted town selectmen to issue a license for "good cause and sufficient reason." We interpreted this phrase in light of the purpose of the ordinance, which was to establish provisions for the orderly and sanitary disposal of garbage. *Derry Sand & Gravel, Inc.*, 121 N.H. at 505. In context, therefore, we held that "good cause and sufficient reason" meant any circumstances that furthered those goals. *Id.*; *see also Dow v. Town of Effingham*, 148 N.H. 121, 132-33 (2002) (race track ordinance is not void for vagueness because it does not specify the exact standards required by the selectmen in assessing a request for a race track permit; it is implied that the selectmen will exercise their discretion consistent with the purpose of the race track ordinance).

■ The plain language of RSA 159:6-b, read in conjunction with other provisions in the same statutory scheme, as well as our prior decisions, gives notice to a person of ordinary intelligence of the conduct that may result in the revocation of his or her license to carry loaded weapons concealed. *See MacElman*, 154 N.H. at 308; *Lillios*, 735 F. Supp. at 47. In light of the statutory limitations on the phrase "proper purpose" and the judicial narrowing of the term "suitable person," discussed above, we conclude that RSA 159:6-b "provides such minimal guidelines . . . that the degree of judgment [it requires] is acceptable." *MacElman*, 154 N.H. at 309; *see Iverson v. City of St. Paul*, 240 F. Supp. 2d 1035, 1037 (D. Minn.), *aff'd*, 74 Fed. Appx. 676 (8th Cir. 2003). Accordingly, we hold that RSA 159:6-b is not unconstitutionally vague on its face.

■ We next address the petitioner's as-applied challenge. To determine whether a statute is vague as applied to the petitioner, we examine whether it gave him a "reasonable opportunity to know that [his] particular conduct was proscribed by the statute." *MacElman*, 154 N.H. at 309. The petitioner, who knew the proper procedure for handling a loaded weapon and failed to follow it, had a reasonable opportunity to know that using a loaded weapon in a public place to tell a story about organized crime threats was not a proper purpose and could result in the revocation of his license to carry a concealed weapon. We hold, therefore, that RSA 159:6-b was not impermissibly vague as applied to the petitioner.

As the Federal Constitution offers the petitioner no greater protection than does the State Constitution under these circumstances, *see Porelle*, 149 N.H. at 423, we reach the same result under the Federal Constitution as we do under the State Constitution.

For all of the above reasons, therefore, we decline the petitioner's invitation to declare RSA 159:6-b unconstitutional.

*Affirmed.*

DUGGAN, GALWAY and HICKS, JJ., concurred.