**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0219, <u>Petition of Assets Recovery Center, LLC d/b/a Assets Recovery Center of Florida & a.</u>, the court on June 16, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioners are Assets Recovery Center, LLC d/b/a Assets Recovery Center of Florida (ARC) — a mortgage-loan servicing company — and Daniel Ferdinand Coosemans and John Olsen — 50% owners and managing members of ARC during the relevant time period. They have petitioned for a writ of certiorari, <u>see</u> <u>Sup. Ct. R.</u> 11, challenging an order of the New Hampshire Banking Department (department) concluding that they violated a number of provisions of RSA chapter 397-B (2006 & Supp. 2015) (repealed 2016). We affirm.

The record supports the following facts. In January 2008, ARC registered as a mortgage servicing company in New Hampshire. In 2009, ARC renewed its registration, which remained effective through the end of December 2009.

In November 2009, the department notified ARC that the department would be conducting an examination of its servicing activities. <u>See</u> RSA 397-B:9-a, I (Supp. 2015) (permitting the department to conduct examinations in order to ensure compliance with chapter). The examination was conducted in April 2010, after which the department issued a report of examination. In the report, a department examiner found that ARC had committed four violations of RSA chapter 397-B. Although it was entitled to request a hearing on the report, <u>see</u> RSA 397-B:9-a, IX (Supp. 2015), ARC did not do so.

Subsequently, in February 2012, the bank commissioner issued a cease-and-desist order against the petitioners, alleging six violations of RSA chapter 397-B by ARC and five violations by Olsen and Coosemans, <u>see</u> RSA 397-B:6, V (Supp. 2015) (stating that "[e]very person who directly or indirectly controls a person liable under this section . . . may . . . be subject to" administrative fines). Some, but not all, of the violations overlapped with the violations found by the examiner in the report of examination.

After a hearing on the cease-and-desist order, the presiding officer found that ARC had committed five violations of RSA chapter 397-B, by: (1) failing to provide requested materials to the department during the examination, RSA 397-B:9-a, VII (Supp. 2015); (2) failing to obtain a surety bond, RSA 397-B:4,

V(a) (Supp. 2015); (3) failing to file annual reports in 2008 and 2009, RSA 397-B:4-a, III (Supp. 2015); (4) failing to issue an annual privacy policy to borrowers located in New Hampshire, RSA 397-B:2, II (Supp. 2015); and (5) conducting unregistered servicing activity with four borrowers, RSA 397-B:4, I(a) (Supp. 2015). The presiding officer also determined that Coosemans and Olsen had committed four violations of RSA chapter 397-B, by: (1) failing to provide materials requested by the department, RSA 397-B:4-b (2006); (2) failing to file two annual reports; (3) failing to issue an annual privacy policy to borrowers; and (4) conducting unregistered servicing activity with four borrowers. The petitioners filed a motion for rehearing, which, as to the issues relevant to this appeal, the presiding officer denied. This petition followed.

"Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court." Petition of Chase Home for Children, 155 N.H. 528, 532 (2007). Our review of the department's decision on a petition for a writ of certiorari entails examination of whether the department has "acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously." Id. "We exercise our power to grant such writs sparingly and only where to do otherwise would result in substantial injustice." Id.

I.  Res Judicata

The petitioners first argue that the presiding officer erred by determining that res judicata barred the petitioners from raising a number of their arguments challenging the cease-and-desist order. By way of background, in the order on the merits, the presiding officer determined that the examination conducted by the department in 2010 constituted an administrative proceeding to which res judicata applied. See Cook v. Sullivan, 149 N.H. 774, 777 (2003) (stating that res judicata may apply "to a decision of an administrative agency which was rendered in a judicial capacity, resolved disputed issues properly before it and which the parties had an opportunity to litigate"). As a consequence, the presiding officer declined to consider those arguments that related to violations that he deemed to have been addressed during the examination.

On appeal, the petitioners argue that res judicata does not apply, and they renew the substantive arguments that the presiding officer deemed to be barred by the doctrine. Specifically, the petitioners contend that: (1) they had no duty to send documents upon the department's request under RSA 397-B:9-a, VII; (2) the department could not command the production of documents under RSA 397-B:4-b; (3) even if they did have a duty to comply with the department's requests, they did, in fact, provide the requested information; (4) ARC had no statutory obligation to obtain a surety bond in 2009; (5) they had no duty to file annual reports in 2008 and 2009; and (6) they had no duty to

renew ARC's registration in 2010.  The department counters that the presiding officer correctly applied res judicata, and, further, that the petitioners' substantive arguments on these six issues are without merit.

Because we are not persuaded by the petitioners' arguments on the six substantive issues, we need not decide whether res judicata applies under these circumstances.  As the appealing party, the petitioners have the burden of demonstrating reversible error, see Gallo v. Traina, 166 N.H. 737, 740 (2014), and as noted above, on a petition for a writ of certiorari, we examine whether the department has "acted illegally with respect to jurisdiction, authority or observance of the law or has unsustainably exercised its discretion or acted arbitrarily, unreasonably or capriciously," Petition of Chase Home for Children, 155 N.H. at 532.  Given this deferential standard of review, and based upon our review of the presiding officer's decisions, the parties' arguments, the applicable law, and the record submitted on appeal, we conclude that, with regard to the six issues, the petitioners have not demonstrated reversible error.  See Gallo, 166 N.H. at 740.

## II.  Enforcement of Gramm-Leach-Bliley Act

The petitioners next argue that the presiding officer erred when he concluded that the department had the authority to enforce the privacy-policy requirement of the federal Gramm-Leach-Bliley Act (GLBA).  See 15 U.S.C. § 6803(a) (2012).  The petitioners' argument relates to the department's claim that the petitioners violated RSA 397-B:2, II, which provides that mortgage servicers must "abide by applicable federal laws and regulations" and makes "[a]ny violation of such law [or] regulation . . . a violation of this chapter."  The department alleged, and the presiding officer found, that the petitioners violated RSA 397-B:2, II by failing to adhere to the GLBA, and specifically, its requirement that financial institutions issue a privacy policy to customers annually.  See id.

The petitioners do not dispute that ARC is subject to the GLBA or that they failed to comply with the privacy-policy requirement.  Nor do they argue that the GLBA preempts RSA 397-B:2, II.  Instead, the petitioners construe the department's claim to be an attempt to directly enforce the GLBA, and they assert that the GLBA does not provide the department with the authority to bring such an action.  In making this argument, the petitioners contend that the department is not proceeding under the authority of RSA 397-B:2, II, because that provision cannot be interpreted as "the New Hampshire Legislature's adoption of all federal laws that [are] applicable to a licensee, including the GLBA."  The department disagrees and argues that it is enforcing RSA 397-B:2, II, which "adopts the provisions" of the GLBA.  We agree with the department.

3

As an initial matter, the record establishes that both the department and the presiding officer considered the failure of the petitioners to issue an annual privacy policy to be a violation of state law, namely, RSA 397-B:2, II. Thus, the only question is whether that provision incorporates the requirements of the GLBA as a matter of state law.

This presents a question of statutory interpretation, which we review de novo. We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 374 (2012). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id.

We conclude that RSA 397-B:2, II incorporates the requirements of the GLBA into state law. By its plain terms, the provision makes a violation of any "applicable" federal law or regulation a violation of RSA chapter 397-B. See RSA 397-B:2, II. Further, the commissioner is empowered to impose a number of penalties and remedies when a servicer "has violated applicable federal laws or rules." RSA 397-B:3, IX(g) (Supp. 2015). These provisions incorporate federal law into state law and thereby authorized the department to take action against the petitioners for violating any applicable federal law. Cf. Appeal of Morgan, 144 N.H. 44, 51 (1999) (concluding that state statute authorized state pharmacy board "to take disciplinary action against [pharmacists] for . . . violations of federal pharmacy law and regulation").

As for whether the GLBA is an "applicable" federal law, we conclude that, at a minimum, "applicable federal laws" include those federal laws that regulate entities subject to RSA chapter 397-B in their mortgage servicing activities. See Webster's Third New International Dictionary 105 (unabridged ed. 2002) (defining "applicable" as "having relevance"). This interpretation is consistent with the purpose of the chapter, which is to regulate entities engaged in the business of servicing mortgage loans, RSA 397-B:2, I (Supp. 2015), as well as with the authority vested in the commissioner to ensure responsible and ethical practices in mortgage servicing activities, see RSA 397-B:3, IX; see also RSA 397-B:4, V (listing obligations of mortgage servicing companies). The privacy-policy requirement of the GLBA, which applies to entities that service loans, comes within the ambit of RSA 397-B:2, II. See 15 U.S.C. § 6809(3)(A) (2012) (defining "financial institution"); see also Privacy of Consumer Financial Information, 65 Fed. Reg. 33646, 33675 (May 24, 2000) (codified at 16 C.F.R. pt. 313) (listing entities subject to the GLBA). Accordingly, we conclude that the presiding officer correctly determined that the department had the authority to enforce the GLBA as a matter of state law, pursuant to RSA 397-B:2, II.

4

III.  Unregistered Mortgage Servicing Activity

The petitioners assert that the presiding officer erred by imposing a $2,500 fine for each of the four mortgage loans ARC serviced while it was unregistered.  The statutory basis for the fines was RSA 397-B:4, I(a), which requires "[a]ny mortgage servicing company which services mortgage loans secured by real property located in the state of New Hampshire" to register with the department.  The presiding officer construed the statute to make "unregistered [servicing] activity" unlawful, such that the four loans ARC serviced while unregistered amounted to four violations of the statute.  Thus, each petitioner was fined a total of $10,000 for these violations.

Although they do not dispute that ARC serviced four loans after ARC's registration lapsed in 2010, the petitioners contend that: (1) the failure to register constitutes only a single violation of RSA 397-B:4, I(a); (2) even if the presiding officer properly construed the statute, the statute "runs afoul of the Due Process Clauses of the New Hampshire and United States Constitutions" because it does not give reasonable notice that the unregistered servicing of each loan constitutes a separate violation of RSA 397-B:4, I(a); and (3) the imposition of $10,000 in fines against each of the petitioners violates the state and federal constitutional prohibitions against excessive fines, see U.S. CONST. amend. VIII; N.H. CONST. pt. I, arts. 18, 33.  We examine each argument in turn.

Looking at the statutory scheme as a whole, we conclude that the presiding officer properly interpreted the statute.  See Frost, 163 N.H. at 374 (describing standard by which we review interpretation of a statute).  In particular, the provisions dealing with penalties under RSA chapter 397-B establish that the construction articulated by the presiding officer is correct.  RSA 397-B:6, IV (Supp. 2015) provides that any person who knowingly or negligently violates a provision of the chapter may be subject to an administrative fine not to exceed $2,500.  Further, "[e]ach of the acts specified shall constitute a separate violation."  RSA 397-B:6, IV.  One act that violates the chapter is the servicing of a mortgage loan by an unregistered mortgage servicing company.  See RSA 397-B:4, I(a).  Importantly, a mortgage servicing company need only register when it actually "services mortgage loans secured by real property located" in the state — that is, it is the act of servicing a mortgage loan that triggers the requirement to register.  Id.  Thus, for each loan it serviced, ARC had a separate obligation to register, and, as RSA 397-B:6, IV makes clear, each failure by ARC to discharge that obligation constituted a separate violation.  In accordance with these provisions, ARC's failure to do so amounted to four violations.  See State v. Schlosser, Nos. 14976, 14968, 1996 WL 280038, at *21-22 (Ohio Ct. App. May 24, 1996) (unreported) (concluding that telephone solicitations of eleven victims constituted eleven violations of statute requiring "credit services organizations to obtain the necessary

certificate of registration before conducting business in this state"), rev'd on other grounds, 681 N.E.2d 911 (Ohio 1997).

Nor are we persuaded by the petitioners' constitutional claims — that RSA 397-B:4, I(a) is void for vagueness and that the imposition of $10,000 in fines against each petitioner is constitutionally excessive.  We first address the petitioners' claims under the State Constitution and rely upon federal law only to aid our analysis.  See State v. Ball, 124 N.H. 226, 231-33 (1983).

Contrary to the petitioners' argument, the registration and penalty provisions of RSA chapter 397-B provide sufficient notice to withstand a void-for-vagueness challenge.  See Bleiler v. Chief, Dover Police Dep't, 155 N.H. 693, 701-03 (2007) (explaining state constitutional standard for void-for-vagueness challenge).  Reading RSA 397-B:4, I(a), which mandates registration when a mortgage servicing company services a loan, in conjunction with RSA 397-B:6, IV, which makes each unlawful act a separate violation, an "ordinary person exercising ordinary common sense" would sufficiently understand that a separate fine could be assessed against a mortgage servicer for each loan it serviced while unregistered.  State v. Lamarche, 157 N.H. 337, 340 (2008); see also Bleiler, 155 N.H. at 701 (stating that vagueness may invalidate a statute if the statute "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits").

Likewise, even assuming that the state constitutional prohibition against excessive fines applies to administrative penalties issued under RSA chapter 397-B, we cannot conclude that the fines assessed by the presiding officer were excessive.  Under the State Constitution, a fine is excessive if it is "grossly disproportionate" to the offense or if the tribunal imposing the fine fails to "consider all the relevant factors necessary to the exercise of its discretion." State v. Enderson, 148 N.H. 252, 259 (2002) (quotation omitted).

Here, in determining that the fines were warranted, the presiding officer considered the length of time that ARC remained unregistered (approximately 17 months), the amount that ARC collected from customers while it was unregistered (over $23,000), and the purposes of RSA chapter 397-B, which include protecting consumers and ensuring responsible practices in mortgage servicing activities.  See RSA 397-B:3, VI (Supp. 2015) (commissioner may take action under chapter when "necessary or appropriate to the public interest or for the protection of consumers"); RSA 397-B:4 (Supp. 2015) (listing requirements of regulated entities).  Having reviewed the presiding officer's orders, as well as the record, we cannot conclude that the imposition of the fines constituted an unsustainable exercise of discretion, or that the fines were grossly disproportionate to the violations.  Indeed, without an adequate penalty power to enforce RSA chapter 397-B, "compliance would quickly wither and . . . the cumulative effects of . . . noncompliance would eviscerate" the department's ability to discharge its duties and protect the public interest.  Sanders v.

Szubin, 828 F. Supp. 2d 542, 553 (E.D.N.Y. 2011) (holding that, under Federal Constitution, $9,000 fine for failing to respond to agency inquiry was not excessive).

On both constitutional claims, the Federal Constitution offers the petitioners no greater protection than does the State Constitution under these circumstances. See Bleiler, 155 N.H. at 703; Enderson, 148 N.H. at 258. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution, and we uphold the presiding officer's imposition of $10,000 in fines against each petitioner.

## IV. The Bank Commissioner's Practices

Finally, the petitioners allege that the bank commissioner has a practice of seeking the maximum statutory penalties in the cease-and-desist orders that the commissioner issues. Relying upon the proposition that a governmental entity exceeds the limits of its discretion if it fails to exercise the discretion vested in it, the petitioners contend that this practice "is an unfair and unjust, arbitrary and capricious, exercise of governmental authority." See, e.g., Bennington Housing Authority v. Bush, 933 A.2d 207, 212 (Vt. 2007) ("[A]n entity, vested with discretion, abuses that discretion when it behaves as if it has no other choice than the one it has taken . . . ."). Although the presiding officer agreed with the petitioners that "the Department seeks the maximum penalty" when it issues a cease-and-desist order, he determined that there was no due process violation because the maximum penalty would be imposed only if "an independent hearing officer concludes that the maximum fine is the appropriate penalty." The petitioners argue that the presiding officer erred by declining to dismiss the violations. We disagree, though we arrive at that conclusion for a different reason from the one articulated by the presiding officer. See Slater v. Planning Board of Town of Rumney, 121 N.H. 212, 216 (1981) (stating that we will sustain a decision of a lower tribunal if there are valid alternate grounds to support it).

Specifically, we conclude that the record offers no support for the petitioners' claim that such a practice exists, and, to the extent that the presiding officer found otherwise, his finding was erroneous. See N.H.-Vt. Physician Serv. v. Durkin, 113 N.H. 717, 721 (1973) (stating that we do not review issues of fact on a petition for a writ of certiorari except "as to whether an agency's findings could have been reasonably made"). The primary evidence that the petitioners offered in support of their allegation was a collection of cease-and-desist orders issued by the commissioner. The order against the petitioners is titled "Notice of Order to Cease and Desist." (Emphasis, capitalization, and underlining omitted.) The order begins by noting that it "commences an adjudicative proceeding." The second paragraph provides that "[t]he Commissioner may impose administrative penalties of up to $2,500.00 for each violation" of the applicable statute. (Emphases added.) The order

7

describes the allegations against the petitioners and the petitioners' right to request a hearing.  It specifically notes that a failure to request a hearing "may result in administrative fines as described in Paragraph 2 above."  (Emphasis added.)  The final section lists the remedies sought by the commissioner, including that the petitioners "shall hereby be administratively fined a maximum of $2,500.00 per violation."  Most of the other orders in the record contain similar language, with minor differences in wording.

Having reviewed the record, we do not agree with the petitioners that these orders support a finding that the commissioner fails to exercise discretion in deciding the penalty to charge for statutory violations.  Although some orders explicitly seek the maximum penalty, most of the orders — including the order issued to the petitioners — simply provide notice of the penalties that <u>could</u> be imposed by the commissioner if, after a hearing, respondents are found to have violated the applicable statute.  Thus, the amount of the penalty is expressed in terms of what the commissioner "may" impose "up to" a statutory maximum.  Although the orders do describe the maximum penalty that the commissioner may impose in the exercise of discretion, they do not indicate how that discretion will or will not be exercised during the adjudicatory proceeding, whether by the commissioner, the department, or the presiding officer.  Likewise, having reviewed the hearing transcript, we do not agree with the petitioners that the department "acknowledged" at the hearing that the alleged practice exists.

Because the evidence upon which the petitioners rely does not support their claim, we affirm the decision of the presiding officer.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**

8